98  445
98  714
98  445
e102 583
e102 584

## Wytheville.

ANDREWS v. ROANOKE BUILDING ASSOCIATION AND INVESTMENT COMPANY.

JULY 5, 1900.

Absent, Riely, J.*

1. BUILDING ASSOCIATIONS—*Withdrawing Member—Status—Act of Limitation.*—A withdrawing member of a building association does not lose all of his rights and interests as such in the association, though he is not, strictly speaking, a creditor of the association. He can maintain no suit to recover the withdrawal value of his stock until a fund for such payment has been provided, and until then the act of limitation does not begin to run against his demand. On the other hand, it is the duty of the association to provide such fund in accordance with its charter and by-laws, and in default thereof the member may ask the appointment of a receiver, and, if need be, the winding up of the affairs of the association.

Appeal from a decree of the Hustings Court of the city of Roanoke, pronounced May 21, 1899, in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

This cause was heard on the bill and exhibits, and on the demurrer, and pleas of the act of limitations of the defendant, "and the joinder of said complainant in the issue made by the said plea and demurrer." No proof was offered except the exhibits filed with the bill. There was no charge that the company

---

*Judge Riely was prevented by sickness from attending this term.

was not able to pay its indebtedness. As the court decides against the defence set up by the pleas of the statute of limitations, it is deemed best to insert the bill in full, in order that it may be seen what rights the complainant asserted, and to what extent these rights are accorded by the court. The bill is as follows:

"To the Hon. John W. Woods, Judge of the Hustings Court for the City of Roanoke, Virginia:

"Humbly complaining, showeth unto your Honor, your complainant, W. K. Andrews, who sues on behalf of himself and such other creditors of the Roanoke Building Association and Investment Company as may come in and contribute to the costs of this suit, respectfully avers:

"1st. That heretofore—to-wit, on the 16th day of March, 1889—Jas. R. Schick et als., and such persons as might thereafter be associated with them, were by the Judge of the Hustings Court for the city of Roanoke, Virginia, upon a petition duly signed and acknowledged according to law, constituted a body corporate under the name of the 'Roanoke Building Association and Investment Company,' a copy of which said act of incorporation is herewith filed as exhibit 'A,' which it is prayed may be read and considered as a part hereof; that under and by virtue of the authority given by said act of incorporation, a company was duly organized, and its stock issued as of April 1, 1889. That at a meeting of the stockholders of said Roanoke Building Association and Investment Company, held on June 16, 1890, by-laws were adopted for the government thereof, a copy of which said by-laws are herewith filed as exhibit 'B,' which is prayed may be read and considered as a part hereof.

"2d. At the time of the organization of said company, or soon thereafter, your complainant acquired by purchase ten shares of the capital stock thereof, and caused to be issued to him a cer-

tificate evidencing the same, being certificate No. 13, a true and correct copy of which said certificate is herewith filed as exhibit 'C,' which is prayed may be read and considered as a part hereof.

"3d. That by the terms of your complainant's subscription, and as is set forth in said certificate, the same was to be paid for in monthly instalments of one dollar per share; that your complainant paid said company the sum of $500 in monthly payments of $10 each, the first of said payments having been made on the 1st day of April, 1889, and the last on April 1, 1893.

"4th. That at a regular annual meeting of the stockholders of said company, held on the 15th day of April, 1892, a resolution was adopted directing its attorney to apply for amendments to its charter, which were therein specifically set forth; that said application was made to the Judge of the Hustings Court for the city of Roanoke, on the 30th day of April, 1892, and the same were by him granted, a copy of which said amendments and resolutions are herewith filed as exhibit 'D,' which is prayed may be read and considered as a part hereof.

"5th. That at the regular annual meeting of the stockholders of said company, held on the 15th day of April, 1893, certain changes were made in the management of said company, and three resolutions were offered in writing and spread on the minutes, proposing changes in the by-laws, which, if adopted, would radically change the by-laws as then existing, and as heretofore filed herewith as exhibit 'B,' and would also change the plan of the company as originally contemplated; that under the then existing by-laws they could only be changed by the proposed amendments being reduced to writing and entered on the minutes one month previous to action thereon; that at an adjourned meeting of the stockholders of said company, held on the 15th day of May, 1893, the resolutions theretofore offered were adopted and the proposed amendments made, a copy of which said amendments are herewith filed as exhibit 'E,' which is prayed may be read and considered as a part hereof.

"6th. That your complainant, being dissatisfied with the changes made, and not being willing to longer remain a stockholder in said company, did, under and pursuant to section 1, page 14, under the heading of 'Withdrawals and Dividends,' of the by-laws as they then existed (see exhibit 'B'), filed on the 20th day of April, 1893, his notice of withdrawal, as was thereby provided.

"7th. That your complainant did not participate, either in person or by proxy, in the stockholders' meeting of April 15, 1893, nor has he, in any way, directly or indirectly, since that date, participated in any meeting of the stockholders of said company.

"8th. That your complainant is advised, believes, and therefore charges, that, as of April 20, 1893, the date at which his notice of withdrawal was filed, there was outstanding of the stock of said company 1,643 shares, upon each of which there had been paid the sum of $50; that a number of said shares have since been paid off and discharged, and that of the residue all have been converted into paid-up stock under the amendments to the by-laws of May 15, 1893, with the exception of twenty-two shares, for which notice of withdrawal was filed prior to May 15, 1893, and of which the ten subscribed for and held by your complainant are a part.

"9th. That at a regular annual meeting of the stockholders of said company, held on the 15th day of April, 1898, certain resolutions were introduced proposing further changes in the by-laws of and an amendment to the charter of said company, which said resolutions were adopted on the 23d day of May, 1898; that pursuant to the directions of said resolutions, the attorney for said company presented to the Judge of the Hustings Court for the city of Roanoke, Virginia, a petition, setting forth said amendments to the by-laws in detail, prayed that they be confirmed by the court, and that said company be given authority to acquire its own capital stock for cancellation; said petition being

accompanied by the affidavit of the secretary of said company; that the prayer of said petition was granted by the Judge of said Hustings Court on the 19th day of July, 1898, and an order entered accordingly, a copy of which said petition, resolutions, affidavit, and order are herewith filed as exhibit 'F,' which it is prayed may be read and considered as a part hereof.

"Your complainant avers and charges that the Board of Directors of said company have proceeded to act under said amendments, have given notice (a copy of which said notice is herewith filed as exhibit 'F—1' as a part hereof) to the stockholders that they would accept bids for the amount of $500 then in the treasury; and that he is advised and believes that said sum has been actually expended by said board in the liquidation of the capital stock of said company.

"10th. Your complainant charges and alleges that so soon as he had perfected his right as a withdrawal stockholder, he *ceased eo instanti to be a member or stockholder of said* Roanoke Building Association and Investment Company, and became its creditor for the sum of $500, with interest thereon for the average time of payment, which is from the 1st day of May, 1891, and that, though demanded, no part of the said sum or the interest thereon has been paid; that he was advised by the secretary of said company soon after his notice of withdrawal was filed that all stockholders who had filed notices for withdrawal prior to his had been paid, save one, and that by the terms of sections 2 and 3 of the amended by-laws as of May 15, 1893 (see exhibit 'E'), he was lead to believe that a provision had been made for the payment of his debt, and that the same would be paid, there being in existence at that time 1,603 shares of instalment stock.

"11th. Your complainant is advised, believes, and therefore charges, that soon after the 15th day of May, 1893, a very large number of the aforesaid 1,603 instalment shares were withdrawn, the holders thereof accepting in payment therefor paid-

up stock, under the terms of 'resolution 3,' adopted May 15, 1893 (see exhibit 'E'); that the holders of the residue of said instalment stock continued to make their regular monthly payments until such time (complainant is not advised as to the exact date), when they, by an agreement made and had with the Board of Directors of said company, were permitted to withdraw their stock, and to the extent of $50 per share paid in by them they were given in payment paid-up certificates of stock upon the terms provided by the last aforesaid 'resolution 3,' and for the excess over $50 per share paid by them to said company, they were reimbursed in cash out of its treasury; that the foregoing facts did not come to the knowledge of your complainant until very recently.

"12th. Your complainant further alleges that he is advised, believes, and therefore charges that, since he perfected his right as a withdrawing stockholder, one-fourth of the current receipts paid into the association on instalment stock has not in the aggregate been sufficient to pay off and discharge the amount due to him, and that no other or further provision has been made for the payment of his debt by said company than that specified and provided in the amendment to its by-laws of May 15, 1893 (see exhibit 'E').

"13th. Your complainant further alleges that he is advised, believes, and therefore charges, that at least one dividend of $10 per share has been paid out of the treasury of said company to those who, under the amended by-laws of May 15, 1893 (see exhibit 'E'), accepted paid-up stock in payment for the shares of instalment stock held by them; that as to what other dividends have been paid, or what disposition has been made of the cash assets of said company, he is not fully advised, but that ample has been collected from the assets of said company to have paid many times over the amounts due to him and all like creditors.

"14th. Your complainant further alleges, avers, and charges as follows:

"A. That the amendments to the by-laws adopted on May 15, 1893, are not now binding on him, and can in no way prejudice his rights, the same having been adopted after his notice of withdrawal was filed, and there is now no possibility of his ever being paid thereunder.

"B. That said Roanoke Building Association and Investment Company is indebted to him in the sum of $500, with interest thereon from May 1st, 1891.

"C. That those stockholders who accepted the terms, 'resolution 3,' of May 15, 1893 (see exhibit 'E'), and *accepted in payment for their instalment stock* (notice of the withdrawal of which has been given), the paid-up stock would have received the benefits to be derived from all the assets of the company after paying those stockholders who gave notice of withdrawal and declined to accept the terms of said resolution, consequently if there be any loss from decreased values the same must be borne by them.

"D. That any and all dividends which have been paid upon the 'paid-up stock' were prejudicial to your complainant and a fraud upon his rights.

"E. That the agreement subsequent to May 15, 1893, by which those of the instalment stockholders who paid in excess of $50 per share were reimbursed as to such excess out of the treasury, was illegal and void, and a fraud upon the rights of your complainant.

"F. That the resolution pertaining to, and the amendments to, the by-laws adopted on May 23, 1898, and which it was attempted to have ratified and confirmed by the order of the Hustings Court entered on the 19th day of July, 1898, and the amendment as of said date by said court to the charter of said company, and any and all payments which may have been made by virtue thereof, were and are illegal and void as to this complainant; that the assets of said company, so far as your complainant is advised, consists of unimproved real estate, of a small

amount of improved real estate, from which rents are being collected, and the residue, which is a considerable portion thereof, consists of personal property and choses in action, and any and all of which said assets may at any time be converted into cash and distributed by the Board of Directors to the stockholders thereof; that if said Board of Directors be permitted to dispose of the assets of said company and apply the proceeds therefrom to the liquidation of their capital stock it will result in irreparable injury and loss to your complainant.

"G. That there is no possibility of the consummation of the initial design for which said company was originally organized; that the preamble and resolutions adopted on May 23, 1898 (see exhibit 'F'), show that an effort is being made to wind up the company's affairs and distribute its assets amongst its stockholders to the prejudice of the debt due your complainant, and in fraud of his rights.

"H. That the effect of the amendments to the by-laws made on May 15, 1893 (see exhibit 'E'), and the action of the Board of Directors subsequent thereto with regard to those of the instalment stockholders who paid in excess of $50 per share on their stock, and of the resolutions adopted at the last annual meeting of the stockholders and the amendments to the company's charter, as of July 19, 1898, was to extinguish, destroy, and otherwise dispose of any and all funds out of which your complainant was entitled to be paid under his contract with said company.

"In tender consideration whereof, and forasmuch as your complainant is remediless save in a court of equity where such matters are alone and properly cognizable, he prays that the 'Roanoke Building Association and Investment Company' may be made a party defendant to this bill, and required to answer the same, but not under oath, an answer under oath being hereby expressly waived; that the contract between your complainant and said defendant company be specifically enforced; that your

complainant be decreed to have a lien for the amount of his debt—to-wit, for the sum of $500, with interest thereon from the 1st day of May, 1891, on the assets of said company, and entitled to payment out of the same in preference to the stockholders thereof; and that sufficient of the assets of said company be sold to pay the same; that the resolutions pertaining to and the amendments to the by-laws adopted on May 23, 1898, and the amendments as of said date to the charter of said defendant company, be decreed to be illegal and void as to your complainant; that said defendant company, its officers and agents, be enjoined and restrained from making further payments out of its assets to the stockholders thereof, or any or either of them, either as dividends or for the purchase of their stock; that a receiver be appointed to take charge of, control, and manage the assets of said company, pending this litigation, and, if need be, to wind up its affairs; that proper process issue; that all necessary accounts be taken; that all proper orders and decrees be had and entered, and that he have all such other, further, and general relief as the nature of his case may require and to equity may seem meet; and he will in duty bound ever pray, &c.

"W. K. ANDREWS.

"S. H. GRAVES, *p. q.*"

*S. Hamilton Graves,* for the appellant.

*Cocke & Glasgow,* for the appellees.

KEITH, P., delivered the opinion of the court.

Appellant instituted his suit in the Hustings Court of the city of Roanoke, on behalf of himself and all other creditors of the appellee, on the 30th of September, 1898, in which he states that he is the owner of ten shares of the stock of the company, upon which he had paid $500 in monthly instalments of $10 each; that on the 20th of April, 1893, he gave notice of with-

drawal to the company in due form; that under the by-laws, as they then existed, his notice did not become effective until the 20th of the ensuing May; that on the 15th day of April, 1893, at a meeting of the stockholders, a change was made in the by-laws, the effect of which was to create a specific sum out of which withdrawals could be paid, which was limited to one-quarter of the amount paid into the association by the holders of instalment stock; that as of May 15, 1893, there were in exist-ence 1,643 shares of instalment stock, monthly payments upon which would have produced something more than $400; that a number of said shares have been paid for, and discharged, and the residue have all been converted into paid-up stock under the amendments of the by-laws of May 15, 1893, with the exception of twenty-two shares, for which notice of withdrawal had been filed prior to May 15, 1893, and of which the shares of appellant constitute a part; that at a regular annual meeting of the stock-holders held on the 15th of April, 1898, further amendments to the charter and changes in the by-laws were proposed, and to that end a petition was presented to the Judge of the Hustings Court, who entered an order as of the 19th of July, 1898, making the amendments asked for by virtue of which, when-ever there happens to be as much as $500 in the treasury, the company notifies its stockholders and invites bids from them, the member offering the largest number of shares of stock to be cancelled for the least amount of money being accepted. It appears that there is not and never has been in the treasury of the company a fund applicable to the demands of the appellant; nor can there be in the future, since there are no longer any con-tributing members.

There are other averments of fact in the bill, the tendency of which is to strengthen the position of the appellant, but enough has been said to enable us properly to present our conclusions with respect to the law of the case.

The defendant demurred, and also filed a plea of the statute of

limitations, setting forth that the cause of action did not arise within three or five years before the institution of the suit.

The position occupied by a withdrawing member of a building association is not very clearly defined by the authorities. It is said that he is not in all respects a creditor, for if that were so he might get judgment, issue an execution, acquire a lien upon real estate, and subject the personalty of the association to the prejudice of other creditors. He is no longer a member of the association so far as his right to participate in its management and control is concerned. He has no right of action against the company until a fund accrues out of which, in accordance with the charter and by-laws of the company, his debt should be paid; and, as it appears from the averments of this bill that no such fund existed at any time in this case, it would seem that the right of action has never accrued to him as a creditor. If this be true, then it follows that his right to sue is not affected by the statute of limitations; but, if he is to be regarded only as a creditor, he is still out of court, because there was no right of action which entitled him to be in court. A member of such an association must, upon withdrawal, retain some relation to the company, growing out of his membership, other than that of creditor. It seems to us that by so much as he falls short of being clothed with the rights of a creditor, by so much there must remain in him the residuum of his rights as a member; otherwise, as in the case at bar, he could not sue as a creditor, because there was no fund out of which his debt could be paid, and the company, by its dereliction of duty, would deny all redress if he is not permitted to seek a remedy in his capacity as stockholder. These propositions seem to be supported by authority.

In *Heinbokel* v. *Building Association*, 58 Minn. 340, 25 L. R. A. at page 216, the Supreme Court of Minnesota held that a member of an association who has brought himself within the

rules by notice of withdrawal, cannot bring an action and take judgment against the association when there is no money in the treasury legally applicable to the payment of his claim.   To the same effect see *Englehardt* v. *Building Association,* 148 N. Y. 281.

In support of the position that a withdrawing member has not lost all of his right or interest as such in the association, there are numerous decisions, and the authority of respectable text-writers.

"The right of members to presently withdraw deposits is practically limited to funds on hand.   And the withdrawing member must show that there are funds for that purpose before he can enforce his demand, but it is an abuse of discretion for the directors to invest the entire funds in real estate so as to leave none applicable to the payment of withdrawing members, and thus defeat their rights.   When notice of withdrawal is given the association, it should arrange the disposition of its receipts so as to meet its payments when due.   While the right to withdraw is only grantable out of funds designated for that purpose, it is not intended that rightful lack of funds shall defeat the right as against the members.   So, if the association is solvent, and a member gives notice of withdrawal, and the notice had matured before the association is being wound up, he is entitled to be paid out of the assets, after outside creditors, in priority to those members who had not given notice, notwithstanding the fact that after he had given the notice there were no funds for payment.   The intention of the rule is to prevent the application of the funds to withdrawals to such an extent that its operations will be crippled; and when it winds up, the reason of the rule does not apply, which readily defeats the application of the rule itself."   Thompson on Building Associations, chapter 8, section 13.

It is said in Endlich on Building Associations, 2d edition, sec-

tion 514, where the •demands of all the members of such a corporation cannot be paid in full, there are ordinarily several classes advancing contradictory claims—"to-wit, members who have given notice of withdrawal, and the period of whose required notice may have expired before the proceedings to wind up were instituted, and members who have given no such notice. * * * The tendency of the English courts, whilst recognizing that a withdrawing member is not a creditor of the association in the ordinary sense of the word, has been to allow them a preference supposed to be based in the rules of the society over those who have given no withdrawal notice."

In *Sibun* v. *Pearce*, L. R. 44 Ch. Div. 354, Lindley, L. J., says of the position of one who has given notice of withdrawal, but has not received payment, "that he is not an ordinary creditor is plain. He cannot come into competition with outside creditors. On the other hand, as between himself and the continuing members, he is entitled to be paid the amount due to him before they can divide the assets. In that sense he is a creditor, though he cannot take part in the affairs of the society."

We have seen that a withdrawing member cannot sue until a sufficient fund is accumulated by the society to meet his demands, for until that event has happened he has no right of action, and it is well established that the statute of limitations does not begin to run until the right of action accrues. We have seen that it is the duty of the association to set apart a fund to meet its obligation to withdrawing members, and it conclusively appears from the bill under consideration that this duty in this instance has not been performed, and that the course taken by the stockholders precludes the possibility that appellant can obtain relief from that source.

The prayer for relief asks the appointment of a receiver, and, if need be, the winding up of the affairs of the company. This prayer, upon the facts presented by the bill, is sufficient to entitle the appellant to the relief which he seeks, if upon a hear-

ing on the merits he is able to establish by proof the case which he has made in the pleadings.

The decree of the Hustings Court must be reversed, and the cause remanded to be further proceeded in, in accordance with the views expressed in this opinon.

*Reversed.*