THE CONTINENTAL NATIONAL BUILDING AND LOAN ASSO-
CIATION, THE FLORIDA NATIONAL BUILDING AND LOAN
ASSOCIATION, THE FERNANDINA BUILDING AND LOAN AS-
SOCIATION, CORPORATIONS UNDER THE LAWS OF FLORIDA,.
THE FIRST NATIONAL BANK OF GAINESVILLE, C. M. ACK-
ERMAN, G. W. HYDE AND JAMES M. GRAHAM, APPEL-
LANTS, VS. D. A. MILLER, F. P. GAFFNEY, H. C. GROVES,
ALEXANDER MCINTYRE, DRUCILLA AGNEW AND SARAH A..
AGNEW, APPELLEES.

1. When one building and loan association absorbs another;
   parties seeking relief solely by virtue of being stockhold
   ers in the absorbing association can not obtain relief
   which could be granted only to members of the associa--
   tions illegally absorbed.

2. Notice of withdrawal given by a member of a building and'
   loan association does not sever his relation so completely
   as to preclude him from bringing a suit for the appoint-
   ment of a receiver and for other equitable relief against
   the association when it has failed in its duty to set apart
   a fund to meet its obligations to withdrawing members,
   and its directors have taken such action as to justify
   such proceedings under ordinary equity rules.

3. A withdrawal member of a building and loan association is·
   not required to obtain a common law judgment and to·
   exhaust all legal remedies before proceeding against the·
   association in equity.

4. Courts of equity are authorized to appoint receivers upon
   the application of minority stockholders, in extreme cases·
   only, and where milder methods are clearly of no avail.

5. Where a competing building and loan association takes·
   over all the assets of another building and loan associa--
   tion then in failing circumstances, treats the latter's as--
   sets as its own, reduces the valuation thereof, uses the·
   funds realized therefrom to pay an indebtedness con-

758 SUPREME COURT. [44th Fla.

·Con. Nat. B. & L. Asso. et al. v. Miller et al.—Opinion of Court.

tracted for the purchase of a third association, seeks to foice the minority stockholders thereof to accept a transfer or surrender of stock, refuses to pay off withdrawal members thereof, charges to its own profit and loss account lapses of stock in the latter company and brings about such a condition of affairs that the absorbed association ceases to be a going concern and becomes insolvent, a court of equity is authorized to set aside such a transaction and to appoint a receiver on behalf of the minority stockholders of the association so absorbed, to take charge of its assets and settle its affairs.

6. A building and loan association is insolvent when its available and collectible assets are below the level of the stock already paid in; when it can not pay back to the stockholders the amount of their contributions, dollar for dollar.

This case was decided by Division B.

Appeal from the Circuit Court for Alachua County.

The facts in the case are stated in the opinion of the court.

*Horatio Davis*, for Appellants.

*Anderson & Hocker*, for Appellees.

COCKRELL, J.

Appellants have filed the amended entry of appeal as required by the order of this court (Continental Nat. Building & Loan Ass'n. v. Miller, 41 Fla. 418, 26 South. Rep. 725), and the cause is before us on final submission upon the amended abstract, which has not been excepted to.

The bill alleges that D. A. Miller, F. P. Gaffney and H. C. Groves have been stockholders in the Continental National Building and Loan Association since November 1st, 1895, and that Alexander McIntyre is a stockholder of the Florida National Building and Loan Association on the withdrawal list; that the Continental was organized under the laws of this State governing building and loan associations, with its office at Gainesville, Florida, and that C. M. Ackerman, G. W. Hyde, and Jas. M. Graham are officers of said association, the said Hyde and Graham are officers of the defendant the National Bank of Gainesville, the said Askerman, Hyde and Graham are also officers of the defendants Florida National Building and Loan Association, and of the Fernandina Building and Loan Association, corporations under the laws of Florida, and that all of the said corporations have their principal place of business at Gainesville; and further, 1. That in November, 1895, the Continental purchased all the assets and securities of the Florida Association, which up to that time had done business at Ocala as its charter required, and at the same time the Continental assumed the liabilities of the Florida. In August, 1896, the Continental purchased the assets and assumed the liabilities of the Fernandina Building and Loan Association, and since said transfers the Florida and the Fernandina have ceased to do business, making no loans, receiving few payments on stocks, paying no withdrawals and discharging no debts, and that such transfers violate the charters of said associations and the laws of the State.

2. That Ackerman, Graham and Hyde have so conducted the affairs of the association, in their extravagance, misappropriation of funds and violations of law,

that the purposes for which the associations were formed have been defeated and the stock will not mature as planned; that the Continental had collected since it began business in December, 1894, up to August 8, 1896, from its members $45,406.05, and no said August 8th, there was in the hands of the treasurer $613.74, and the loans amounted to $13,899.11; that there was credited to the loan fund the sum of $30,454.38, so that there should be assets either in cash or in mortgage securities for the difference of $16,000, or thereabouts, but the said company has no assets to represent this sum; that the net cash receipts to the credit of the expense fund amounted to $3,054.61, but there has been paid out for expenses $4,933.59, an over draft that unlawfully was paid out of the loan fund.

3. That since August 10th, 1896, Hyde, Graham and Ackerman have been the only directors of the said association, and that Ackerman has been paid, contrary to its by-laws, a salary in advance out of the loan fund; that stated meetings at which money in the treasury should be offered to the stockholders have not been held as required by law, and the officers have discouraged the making of loans and diverted the funds that should have been used for that purpose.

4. That said officers borrowed over $4,000 from the defendant bank, of which two of them were officers, pledging for said loan $25,665.49 of the mortgage securities of the association, and created other named debts; and that said borrowing and pledging are void, in violation of law and its charter.

5. That there are notices of withdrawals of stock to the amount of $6,000, which were filed before November 1st, 1895, for which payments are demanded and refused; that

said officers are seeking to purchase stock so filed at fifty per cent. of its real value, and refuse to set aside, as required by law, one half of the receipts credited to the loan fund, to meet such withdrawals, and postpone such payments so as to compel an acceptance of their offers to purchase; that the Continental has taken all the assets of the Florida and has collected large sums from its assets and securities, and the directors of the Continental held a meeting without notice to any member of the Florida and arbitrarily reduced the valuation of the latter's assets fifteen per cent. and have done all in their power to lessen the value of its stock and vexatiously and vigorously, without shadow of justice, defend all pending suits seeking to withdraw stock, so as to be able to purchase said stock for a trifle.

6. That there is imminent danger of an unlawful disposition of the assets if notice of application for an injunction be given, by reason of the intimate relations between the officers of the association and the bank; that the three associations are each insolvent, and that such insolvency has been brought about by the unlawful management of the officers seeking to make profits on the losses of the members; that the assets of the Continental and the Florida have been illegally used in buying up the Fernandina association and in repaying the bank loan which has been used in that speculation; and that the functions of the corporations as building and loan associations had been wholly defeated.

The prayers are that a decree be entered declaring the acts of the officers illegal, the associations insolvent, that the affairs of the associations be liquidated by a receiver and the assets realized on for the benefit of the members; that the loans from the bank be declared void; the con-

tract by which the Continental purchased and took pos-
session of the assets of the two other associations be de-
clared void and the assets returned to the associations;
that the said officers be restrained from disposing of the
assets or altering or erasing the papers, books or records;
that a receiver be appointed to take possession of the
property of the associations, under orders of the court, to
collect the moneys and realize on the assets and to make
distributions and for general relief. The bill was sworn
to.

A restraining order was issued as prayed.

An answer was filed by the three associations in which
they admit that Miller, Gaffney and Groves are stock-
holders of the Continental, but say that the Florida books
do not show that McIntyre is a stockholder; admit their
incorporation under the laws of Florida, but say the Flor-
ida has its principal place of business at Ocala, and the
Fernandina at Fernandina. They deny the Continental
purchased all the assets of the Florida; but say it did
transfer stockholders in the latter who so desired, by
assignment of stock, transferring the said stock and ac-
cepting mortgages of the Florida to the amount of stock
so transferred, and the same transaction was had with
the Fernandina, but no liabilities were assumed; that the
Florida and the Fernandina have continued to do busi-
ness. have paid all withdrawals and discharged all debts,
but have made no loans as none has been asked; that no
acts of the Continental were illegal and that whatever
was done with the Florida by the Continental was done
with the consent and approval in writing of each and
every one of the complainants. They deny gross mis-
management on the part of the directors and claim the
stock will mature in advance of the time fixed in the pros-

pectus; allege the Continental had collected up to August 8, 1896, the sum of $35,695.98, of which $30,438.69 had been credited to the loan fund and $5,257.29 had been credited to the expense fund, and that on said date the treasurer had $4,743.56 to the credit of the loan fund; that $12,500 had been loaned to members, $12,247.39 had been paid to withdrawing members and $945.97 had been expended for taxes, insurance, foreclosure proceedings and other loan items, and correct other statements in the bill as to the assets of the association.

The answer further alleges there is a fourth director, one Cellon, and it was their intention to elect a fifth, and that Ackerman is not on a fixed salary and has not been paid in advance; that fixed meetings have been held and loans made when the funds warranted it and the securities offered were sufficient. That the money borrowed from the bank was used in paying off withdrawal members in the Fernandina; that the securities of the latter were pledged as collaterals and that the sums so borrowed had been reduced by payments to $1.800; that only $3,000 of withdrawals are on file, and that its officers have not attempted to buy stock at a reduced value; say that the failure to pay off the Florida members was due to small collections and depreciation of the securities. It further denies insolvency, but alleges that the three associations are flourishing and court an investigation.

The bank answering says it loaned the Continental $4,000, taking Fernandina mortgages as collateral, and that all but $1.800 has been paid, and denies any other connection with the associations. Hyde, Graham and Ackerman answering say they are present, vice-president and general manager respectively of the three associations, that they have economically and judiciously man-

aged the affairs thereof, that said associations are solvent and set up the joint financial standing of the associations.

The cause coming on to be heard upon the filing of these answers for temporary relief, an amendment was allowed to the bill, permitting all stockholders and creditors of the associations to join in the bill, and in response thereto Drucilla Agnew and Sarah A. Agnew, as withdrawal stockholders of the Florida, intervened.

The injunctional order was modified so as to permit the three associations to continue business as three separate and distinct building and loan associations, and an order of reference was entered.

Upon the coming in of the master's report the court sustained certain exceptions thereto, and finding the Florida to be insolvent, decrees "that the sale and transfer of the assets of the Florida National to the Continental National in 1895 is void and of no effect as to the complainants in this bill and to all others holding stock in the Florida National Building and Loan Association, or may hold stock in the Continental National Building and Loan Association given to them in lieu of the Florida National Building and Loan Association stock, who shall become parties to this suit within sixty days and whose stock has not been legally forfeited." and appoints a receiver. The court found the Continental and Fernandina solvent and granted no relief as against them.

From the foregoing very full statement of the pleadings it is apparent the complainants Miller, Gaffney and Groves, are claiming relief solely by virtue of being stockholders in the Continental. It nowhere appears in the pleadings that they were members of, or in anywise interested in, the Florida. The very fullness of the proof in this regard must have misled the court below into the

assumption that the necessary allegations were in the bill, whereon such proof might have been based. The relief granted them can not be justified in the pleadings, and so much of the decree as has reference to these complainants, or to those in like situation who might come in, is erroneous.

A more difficult question arises when we consider the right of McIntyre and the Agnews to the relief granted. The status of a member of a building and loan association who has given notice of his withdrawal, as required and for the time required, to enable him to demand the moneys paid in, has given the courts much trouble. In some respects he has been treated as a creditor, and in others as still a member, a quasi partner. When the association has become insolvent and there are circumstances sufficient to justify the appointment of a receiver under ordinary equity rules, it has been held, and we think it now the correct holding, such a member has a status in a court of equity, and is not like an ordinary creditor to be remitted first to the law courts to establish his judgment and seek by its process to secure his debt. As expressed by one court: "Notice of withdrawal, given by a member of a building and loan association, does not sever his relation so completely as to preclude him from bringing a suit for the appointment of a receiver and the winding up of the affairs of the company, when it has failed in its duty to set apart a fund to meet its obligations to withdrawing members, and the stockholders have taken such action as to preclude the possibility of relief from that source." Andrews v. Roanoke Building Association & Investment Co. 98 Va. 445, 36 S. E. Rep. 531, S. C. 49 L. R. A. 659. We can not improve upon the forceful language or clear reasoning of the Virginia court in that

case, and quote therefrom this paragraph in its entirety: "The position occupied by a withdrawing member of a building association is not very clearly defined by the authorities. It is said that he is not in all respects a creditor, for, if that were so, he might get judgment, issue an execution, acquire a lien upon real estate, and subject the personalty of the association, to the prejudice of other creditors. He is no longer a member of the association, so far as his right to participate in its management and control is concerned. He has no right of action until a fund accrues out of which, in accordance with the charter and by-laws of the company, his debts should be paid; and, as it appears from the averments of this bill that no such fund existed at any time in this case, it would seem that the right of action has never accrued to him as a creditor. If this be true, then it follows that his right to sue is not affected by the statute of limitations; but, if he is to be regarded only as a creditor, he is still out of court, because there was no right of action which entitles him to be in court. A member of such an association must, upon withdrawal, retain some relation to the company, growing out of his membership, other than that creditor. If this be true, then it follows that his right short of being clothed with the rights of a creditor, by so much there must remain in him the residuum of his rights as a member; otherwise, as in the case at bar, he could not sue as a creditor, because there was no fund out of which his debt could be paid, and the company, by its dereliction of duty would deny all redress if he is not permitted to seek a remedy in his capacity as stockholder. These propositions seem to be supported by authority."

Having determined their status in equity, we next inquire have they stated and proved a case entitling them

Con. Nat. B. & L. Asso. et al. v. Miller et al.—Opinion of Court.

to the interposition of a court of equity to seize from those placed in authority by the majority of the stockholders, the management of a corporation and place it in the hands of an officer of the court. Such a remedy must be restored to only in extreme cases and where milder methods are clearly of no avail.

In recent years there have been many instances of building and loan associations being placed in the hands of receivers and the adjustments of the contending claims of the various classes of stockholders have been the subjects of many divergent views among the courts, but that receivers may be appointed on the application of minority stockholders when the association is insolvent and other equities are shown, has been frequently recognized and acted on, in other jurisdictions.

Building and loan associations are peculiar institutions and have been the favorites of the legislatures. Florida, in common with many sister States, has excepted these associations from the usury laws, when conducted according to the laws of the State, and such exceptions have been upheld as valid class legislation by other courts. When local in their operations and prudently managed they have served a useful purpose in enabling the man of small means to build his modest homes or to make a safe and profitable investment of his meagre earnings; but when they branch out and forget the original purposes and limitations that have given them this favored position, trouble not infrequently arises.

The exact nature and terms of the contract between the Continental and the Florida do not seem to be very clearly understood by the parties, nor even by counsel. We think, however, the record clearly shows the result of such contract to be that all of the assets of the Florida

have been taken by the Continental and considered by the latter as its own; as instance the directors of the Continenal reducing the valuation of the assets of the Florida, assessing a loss by depreciation, and in making proof of the solvency of the three associations they combine their total assets and liabilities, as if they were in fact one. Again, how was the contract with the Fernandina concern carried out? By borrowing money from the bank, and pledging, it is true, the collaterals of the Fernandina only, but in repaying said loan using the moneys indiscriminately that came from any of the constituent companies. It further appears the Continental charged to its own profit and loss account the moneys received from the lapsed stock of the Florida.

It is shown that 1500 of the 1956 shares of the Florida accepted the transfer of stock to the Continental at the inception of the plan, and pressure was used to compel the minority holding out to accept a like transfer, or surrender their stock. It seems that about 100 of these subsequently accepted the transfer or were paid off. A competing association in an adjoining county had thus acquired a large majority of the Florida stock, controlled absolutely its board of directors, had charge of its assets and the conflicting interests would of necessity tend to discourage the getting in of new stockholders in the Florida or the making of its management successful and to compel the surrender of its stock for that of the competing obsorbing association. It is admitted that many of these stockholders have filed application for withdrawal and moneys were secured from the bank to be applied on the stances more than a year, have elapsed, and in the interim moneys were secured from the bank to be applied in the Fernandina deal, which has been repaid in part from the

loan fund that should have applied to the payment of the Florida withdrawals. To all intents and purposes it does appear the Florida has ceased to be a going concern, having a separate entity, and that the only hope of the withdrawal members for realizing on their contracts with the Florida lies in the suit instituted, and that this situation has been brought about by the action of the directors made defendants therein.

It is also admitted that in July, 1895, the Florida was in bad shape financially, owing to the freeze of the preceding winter and the failure of an Ocala bank, the president of which was prominently identified with this association, and that the directors were then contemplating the placing of it in the hands of a receiver or liquidating its affairs through another company, and the showing is made satisfactorily to us that at the time of the receivership herein matters were yet worse.

Insolvency of a building and loan association is *sui generis.* "They can have few creditors outside of their own membership, and frequently have none. It is such a condition as reduces the available and collectible assets below the level of the stock already paid in. The association is said to be insolvent when it can not pay back to the stockholders the amount of their contributions, dollar for dollar." Towle v. American Bldg., Loan & Inv. Soc. 61 Fed. Rep. 446. Such a condition is clearly shown herein.

The abstract is far from full, and there is internal evidence of much omitted matter that apparently influenced the Circuit Court as shown in its findings, but we have been able to spell out enough to satisfy us that court was right in holding the circumstances, alleged and proven,

49 S. C.

were sufficient to justify it in setting aside the contract between the Florida and the Continental as to McIntyre, the Agnews and such other stockholders of the Florida who might intervene, and in appointing a receiver to carry out the decree of that court.

Without committing ourselves unreservedly to all that may be said therein we cite as examples of what has been considered by others as sufficient grounds for this relief, the following cases. Miner v. Belle Isle Ice Co., 93 Mich. 97, 53 N. W. Rep. 218; Frostburg Building Association of Allegany Co. v. Stark, 47 Md. 338; Andrews v. Roanoke Building Association & Investment Co. 98 Va. 445, 36 S. E. Rep. 531, S. C. 49 L. R. A. 659; Towle v. American Bldg., Loan & Inv. Soc. 60 Fed. Rep. 131; Universal Sav. & Trust Co. v. Stoneburner, 113 Fed. Rep. 251; see, also, 7 Thomp. Corp. section 8792.

We have disposed of all the points raised by appellants under the rules of this court, and necessary to the disposition of the appeal from the decree rendered.

An order will be entered affirming the decree in so far as it appoints a receiver and grants relief to Alexander McIntyre, Drucilla Agnew and Sarah A. Agnew and other stockholders in the Florida National Building and Loan Association, and reversing in so far as it grants relief to D. A. Miller, F. P. Gaffney and H. C. Groves and others in like situation; and the cause will be remanded for such further proceedings as may be consistent with equity practice and with this opinion. The appellants will be taxed with the costs in this court.