## BOYD *v.* ROBINSON *et al.*

1. Where the property of a building and loan association, upon petition of some of its stockholders, has been placed in the hands of receivers among whose duties is the collecting of its assets; and subsequently the petitioners and the receivers unite in an amendment to the petition in the nature of a supplemental bill, which amendment seeks among other things the marshaling of the assets of the corporation, the ascertainment of the rights and liabilities of various stockholders, and the final distribution of the assets; and where in such amendment all of the members of the association, including those who have received loans or advancements upon their stock as well as those who are "non-borrowers," are made parties

defendant, such amendment is not demurrable upon the ground of misjoinder of parties plaintiff or defendant, or on account of multifariousness.

2. A member of a building and loan association who has received a loan or advance upon his stock and who has hypothecated the stock as security for the loan, by an absolute transfer of the same to the company, does not thereby lose his membership in the association.

3. The court in which the original petition was filed and the receivers appointed has jurisdiction to entertain the proceedings instituted by the amendment above described, especially where some of the defendants against whom substantial relief is prayed reside in the county where the original suit was brought.

Argued May 17, 18, — Decided July 19, 1898.

Equitable petition. Before Judge Lumpkin. Fulton superior court. September term, 1897.

Robinson et al., stockholders of the Southern Mutual Building and Loan Association, a corporation having its principal office in Fulton county, brought to the superior court of that county their petition against the association, alleging that it was insolvent, and praying for the appointment of a receiver to take charge of its assets and property, to wind it up, pay its debts, and distribute the balance of its funds pro rata among the stockholders according to their interest therein, etc. By amendment it was alleged, that the Union Loan and Trust Company and others, who were thereby made parties defendant, had in their possession certain assets of the association, which came into their possession fraudulently and were held in violation of the rights of the petitioners; and it was prayed that these defendants be required to turn over to the receiver such assets. The court granted an injunction, appointed Anderson and O'Byrne receivers, and authorized and directed them to collect all sums due to the association, to institute or become parties to such suits as they might deem advisable in order to accomplish this purpose, to make themselves parties to any suit to which the association might be a party, and to take such proceedings therein as in their judgment might be necessary for the protection or collection of the assets or interests of the corporation. Plaintiffs then filed a supplemental petition, the receivers joining therein, in which such of the stockholders of the association as were indebted to it for money advanced or loaned by it on their stock were made parties de-

fendant, one of whom was James S. Boyd, a resident of DeKalb county, who had conveyed to the association, as security for the loan made to him, certain land situated in Fulton county. Boyd filed a demurrer on the following grounds: (1) Want of jurisdiction as to him. (2) Misjoinder of parties plaintiff. (3) Misjoinder of parties defendant. (4) Petition multifarious. (5) Petitioners are not entitled to any relief as against Boyd. The demurrer was overruled, and Boyd excepted.

The supplemental petition alleged: Defendant is a building and loan association, and its income was derived largely from the dues, premiums, interest, and fines paid by its members or stockholders. Its stockholders are divided into two different classes; one, those who have simply paid in the dues on their stock, as provided by the charter and by-laws, and who might, for convenience, be called investment stockholders; the other, those who have been advanced or have gotten money on their stock from the association, called, for convenience, advanced members; the two classes being generally, though inaccurately, distinguished as "non-borrowers" and "borrowers." These two classes are subdivided in minor classes, the association having issued at different times, and concurrently, different classes of stock known as classes A, B, C, D, E, and F, under which classes, while the amounts to be paid and the time of maturity and other details were more or less different, the general scope and plan were practically the same (as shown by the charter and by-laws of the association, copies of which are exhibited), and all stockholders in all of these classes were mutually interested in the profits and the expenses and losses of the business. At the time the receiver was appointed, there were outstanding 32,607 1/4 shares of the stock of the association, issued to and held by the members or stockholders, divided among the various classes mentioned, of which number 23,406 13/20 shares had not been advanced or borrowed upon; the remaining shares had been advanced or borrowed upon by the members holding the same. From the time these shares were issued to the holders they became members or stockholders of the association, and on account of their shares entitled, under its by-laws, to share in the profits, and were correspondingly liable to bear

the expenses and losses. After setting out the receipts of the association, the amounts paid out by it during its existence, and the assets which the receivers were able to find, and alleging that losses in amounts stated had been sustained by the association by reason of the disappearance of a portion of the assets which could not be traced, the depreciation in value of real estate held by it, etc., the petition alleged that each and every share of stock is liable to bear its pro rata share of these losses, and that to find the amount to which each share is entitled in the distribution of the assets, it is necessary that each and all of these losses and expenses be accurately ascertained, and that each and all of the stockholders should be before the court for these purposes. With the exception of a comparatively small amount of property heretofore bought in by the association, and the few thousand dollars collected by the receivers, the bulk of the assets consists in the money advanced or loaned to certain of the members of the association, and for which their bonds, notes, mortgages, and other evidences of indebtedness are held. In order to realize on the assets of the association, so as to equitably distribute them, it is necessary to call in and collect these various indebtednesses due by the members or stockholders, and to do so in such a way and on such a plan that each member, and each share of stock held by him, whether advanced to or not, shall prorate with every other share its proportion of the losses and expenses. This being a mutual company, any other plan would be unjust and inequitable. As a large part of the fund for final distribution must arise from the amounts collected from the stockholders who have received advances, and on account of the insolvency of the association, 'for causes stated, it would be inequitable to make them bear alone the whole burden of all these losses and expenses, which would probably result to each of them if they were sued separately on the contract; it is equitable and just that the burden of these losses and expenses should be borne by non-advanced stockholders, as well as those to whom advances have been made. It is also necessary that all stockholders who have received advances should be made parties to one suit, in order that a single and uniform rule as

to the proportion of the losses and expenses which all of them should bear may be laid down, and that a proper rule of apportionment thereof and contribution thereto may be decreed, as well as an ascertainment of a uniform value of each character of stock, according to the time and amount paid in on each share, and the proper credits which should be allowed to borrowers for what they have paid in, as well as for the value of their shares, may be fixed by one rule applicable to all in the same condition alike; all of which is impossible if separate suits are instituted against each, or unless all such persons are made parties to one suit and subject to a common accounting and marshaling of assets in one court, where one decree can fix all of the rights and liabilities equitably to all of those mutually interested in these losses and expenses and in the fund to be distributed.   The court of equity which has taken and holds jurisdiction of the case is the only court that can do complete justice between all of these conflicting rights and interests, and it can only do so by having before it all the parties interested in this common fund, both those who are to contribute to the fund, and those who are to share in this distribution, so that each and all shall be represented, and may be forced to bear their fair proportion of the losses and expenses of this insolvent association, in which losses and expenses each and every stockholder and every share is mutually interested.

The petition then sets out a list of members owning stock in the association, to whom advances or loans have been made on their stock, with the amounts received and the amounts due, from which it appears that there are 290 persons residing in numerous counties of the State, more than thirty of whom reside in Fulton county, who have borrowed on stock.   A list is also given of the respective pieces of property conveyed to secure the indebtedness.   In a list of "advanced" members residing in DeKalb county, who are indebted as such, and who have given real estate security for the advances, appears the name of James S. Boyd; and it appears that the land conveyed by him as security is in Fulton county.   A copy of the form of bond and deed given by each of these stockholders to whom loans were made, is attached to the petition as exhibit A.   The

petition shows that certain of the borrowing stockholders have given as security their shares of stock only. All of the real estate loans set forth, it is alleged, were made to members holding old class A stock, except where specifically stated otherwise, and those are on class F stock. Where advances are made on real estate both on class A and class F stock, the stock, as well as real estate, is pledged, and held by the association as security. All of these stockholders are made parties defendant. Waiving discovery, the petitioners pray: (1) For process. (2) For judgment against each of the defendants named, for the amounts found due by them respectively. (3) That the judgment be so molded that it shall be a special judgment against the real estate or the property given as security for the indebtedness, that the same be decreed to be first lien on the property, and that the judgment likewise be a general judgment against them respectively for the amounts due respectively, to be first levied on the property given as security for the same. (4) That the court ascertain the value of the respective shares of stock, and what proportions thereof should be allowed as credit on loans or on the indebtedness of the advanced members or borrowers, provided any of them should see fit to pay off their indebtedness, and that the court, by provisional decree, order at what amount stock, either advanced or not advanced upon, may be used in the settlement of the indebtedness of such members, the allowance so made not to be a final cancelation of the stock, but to be indorsed thereon, and accounted for in the final decree. (5) That on final decree the rights of each and all of the stockholders and members be fixed, and that on the final distribution the court ascertain the losses and expenses, and apportion them as to it may seem proper among the stockholders and members. (6) For general relief.

J. Howell Green, for plaintiff in error.

W. H. & E. R. Black, Lumpkin & Burnett, King & Spalding and Dorsey, Brewster & Howell, contra.

SIMMONS, C. J. It will be seen from the official report, that the Southern Mutual Building & Loan Association became insolvent, and that certain of its stockholders filed in the superior court of Fulton county, the county of the residence of the

corporation, an equitable petition which alleged various acts of fraud and collusion between some of the officers of the corporation and certain other parties, and prayed an injunction and the appointment of a receiver. These prayers were granted by the court, and receivers were appointed to collect and to take charge of the assets of the corporation. The original petitioners and the receivers then filed an amendment, in the nature of a supplemental bill or a petition ancillary to the original petition, making various allegations and setting out the reasons why it was necessary to make all the members of the association parties to the action, naming as parties both those members who had received advances and those who had not, and alleging that there were 290 of the former class. Among those named as having received advances was Boyd, the plaintiff in error here. He in his own behalf demurred to the amendment, on the grounds, that there was a misjoinder of parties plaintiff, misjoinder of parties defendant, multifariousness, want of jurisdiction in the court over defendant Boyd, and that the amendment set out no cause of action against him.

1. While we think it was not necessary for the original petitioners to have joined as parties plaintiff in this amendment in order to collect the assets of the association, still, as they were the original parties plaintiff to the petition and interested in the collection of the assets, they may properly have been parties plaintiff to the amendment. When the assets of the corporation were placed in the hands of receivers, these receivers represented the corporation, and, under the order of the court, could have filed this ancillary petition without joining as parties plaintiff therein the original plaintiffs. If the receivers had a cause of action, the court did not err in refusing to dismiss the petition on the ground that these other parties plaintiff had joined therein. Under the facts alleged in the amended petition, there was no error in overruling the demurrer setting up a misjoinder of parties defendant. The association was a corporation having many members. While the liability of the members may have been different as to amounts and degree, yet all the members were mutually interested in the final decree to be had under the original petition. The amendment

shows that there were five classes of stockholders in the association, some of whom had received advances and some who had not. In order to do exact and complete justice to each member, it was necessary to have all made parties to the proceeding so that all would be bound by the final decree to be taken at the termination of the litigation. "A court of equity has jurisdiction at the suit of shareholders of unredeemed shares in a building association to call the redeemed shareholders to account, enforce payment of what they respectively owe, distribute the fund among the unredeemed shareholders, and wind up the concern; and where suit is brought to wind up the affairs of such an association, all the shareholders should be made parties, and if any have been illegally released, their liabilities should be enforced." 2 Lawson's Rights, Rem. & Pr. § 593. "All persons who are directly or consequentially interested in the event of the suit are properly made parties to a bill in equity, so as to prevent a multiplicity of suits by or against parties at once or successively affected by the original case." *Blaisdell* v. *Bohr*, 68 *Ga.* 56. See also *Goodrich* v. *City Loan Association*, 54 *Ga.* 98, 101. It is contended by counsel for plaintiff in error, that several distinct and independent matters were joined in the petition against several defendants, and that the court should have sustained the demurrer because of multifariousness. In our opinion, the court committed no error in overruling the demurrer on this ground. The subject-matter of the petition was the winding up of the affairs of the association so as to do exact and complete justice among its many members. The decree finally to be rendered may subject some of the members and release others. "To sustain a bill against the charge of multifariousness, it is not indispensable that *all* the parties should have an interest in all matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit, which is common to all, and they are connected with others." *Worthy* v. *Johnson*, 8 *Ga.* 236, quoted with approval in *Blaisdell* v. *Bohr*, supra. In the proceeding now under consideration, all the members of the association can be heard, all of their rights and liabilities can be determined, and the whole matter fully and finally adjudicated. *Bowden* v. *Achor*, 95 *Ga.* 243.

2. The plaintiff in error contended, that if the foregoing is true it does not apply to the facts of this case, because when he secured the advance and assigned his stock absolutely to the association, he ceased to be a member of the association, and that therefore the plaintiffs in the court below had no right to join him as one of the defendants; that if he owed the association anything, it was upon a separate and independent contract, and there was no community of interest between him and the association or its members. He relied upon White *v.* Mech. Ass'n, 22 Grattan, 233, Pabst *v.* Ass'n, 1 McArthur (D. C.), 385, and other cases from the same courts. These cases seem to sustain his contention; but, as far as we can ascertain, they have not been followed by any other courts. The great preponderance of authority is to the effect that a member who borrows from the association, and hypothecates his stock as collateral for the debt, does not on that account cease to be a member of the association. Mr. Endlich, in his treatise on Building Associations (2d ed.), § 121 et seq., combats the views of the Supreme Court of Virginia as expressed in White *v.* Mech. Ass'n, and as to that case says, in a footnote: "Observe the inconsistency: he has lost his membership, but is bound, as a member, to the duties of membership, and has even put himself under bonds to be a good member." In section 122, after discussing the only method by which a member can cease to be a member, he says: "But upon any other plan, the borrower, undertaking to continue his payments until, having gone into the general fund, they, with the other contributories, have swelled it to a certain magnitude, distinctly retains his interest in, his right to benefit by, his privilege to participate in, the profits derived from all those various sources. It can not, therefore, upon any logical principle be said, that he has one particle less interest in the common fund of the association than before he became a borrower; that the whole scheme is in the slightest degree less mutual, as to him, than it was before; that the management of the society's business, and the proper administration of its affairs, are of any less moment to him as a borrower, than they were to him as an investor. In the latter character he was anxious to see it prosper for the sake

of speedily realizing the prospective cash value of his share; in the former, having anticipated that cash value, subject to a heavy discount, he is equally, nay, more concerned to hasten the period of his discharge; for, in addition to his stock-payments, which he has obligated himself to make equally as if he were an investor only, and as to which he has surrendered the right of withdrawal, he is obliged to pay interest upon the money he has received. Now, if he retains all the interests of membership in the building association, which are, at all times, the basis of its rights, he certainly retains all of the latter. In other words, a borrower continues, in every sense of the word, a member of the association." After citing decisions from various courts to sustain this doctrine, and among them those of this court, he says: "And it may be safely stated that the doctrine has forced its own recognition upon the courts of nearly every State in the Union, as well as England." This doctrine was adopted by this court in the case of *Parker* v. *Fulton Loan Ass'n*, 46 *Ga.* 166, and in that of *Pattison* v. *Albany Blg. Ass'n*, 63 *Ga.* 373. In both of these cases, and indeed, so far as we know, in every Georgia case which has dealt with the winding up of these associations where borrowers' rights were in issue, this court has treated borrowers as being members of the association. In Thompson on Building Associations, p. 71, § 19, the same principle is recognized, and various authorities cited to sustain it.

3. Having shown that Boyd was still a member of the association, and that he was consequently interested in the distribution of the assets and the payment of the losses, it necessarily follows that he was a necessary party in order that his rights and liabilities may be adjusted in winding up the affairs of the association. A court of equity, having jurisdiction of the subject-matter and having seized the assets of the corporation, has power to make all necessary parties and to bring them within its jurisdiction whether they reside in the county where the petition was filed or in another. Unless this could be done, it would be folly for any court to undertake to wind up the affairs of an association of this character. The 290 advanced members of the association may reside in fifty different counties of

the State. To bring suits against them separately, each in the county of his residence, would be a source of great expense and litigation and needlessly exhaust the assets of the association. Such a course would give rise to a multiplicity of suits in which, perhaps, a jury in one county would find one way as to the liability of a member and a jury in another county in a different way as to a member whose liability should be the same. One trial judge might take one view of a member's liability, and another judge quite a different view. It is far preferable to have all the claims and all the litigation brought before one court and decided, and a final decree made adjudicating the rights and liabilities of all parties. In the case of *Dalton & M. R. Co.* v. *McDaniel*, 56 *Ga.* 191, this very question was decided by this court. The railroad company, it seems, had become insolvent. McDaniel had obtained judgment against it, on which an execution had been issued, and a return of nulla bona made on the execution. McDaniel filed a bill against the subscribers to the stock of the company, to compel them to pay in a sufficient amount to satisfy his claims. The subscribers lived in different counties. A demurrer was filed to the bill, upon the ground that it did not appear that any of the defendants resided in Whitfield county, where the bill was filed, nor in what county they did reside. The demurrer was overruled, and on a writ of error to this court this, with other rulings of the trial judge, was affirmed. Jackson, J., in delivering the opinion of the court, said: "The remedy by bill in equity is easier and more complete. With its power to appoint an auditor or master in chancery to audit the amount of the debts of the corporation in gross and the debt due to each creditor, to ascertain the number of stockholders solvent and insolvent, the per cent. necessary to be paid by each stockholder in proportion to his stock, it is perfectly clear that complete justice can be better administered to every creditor and to each solvent stockholder by a court of equity than by any other form of procedure. It will prevent a multiplicity of suits, save costs, and give speedy and effectual relief. Principle, therefore, and sound reason accord with authority that equity will grant relief in all such cases." In the case of *Lavender* v. *Thomas*, 18 *Ga.* 668, Benning, J., in

discussing this question said (p. 678): "There may, however, be equity cases in which it will be impossible to observe the maxim—as cases in which more parties than one are necessary to any decree, and those parties some of whom reside in one county and some in another. And this case is such a one; for in this case no decree, disposing of the fund in the hands of the sheriff, can be rendered, unless the case in which it shall be rendered shall be such a case as shall bring some one or more of the persons interested in the fund out of his county, into the county of some other of the persons interested in it. That being so, the best county in which to bring this suit was the county in which the suit was brought. In that county resided the person who had the funds in his hands, and who was sheriff of the county, and who, as sheriff of the county, held the fund." In *Brobston* v. *Downing*, 95 *Ga.* 505, certain depositors and creditors of a bank brought suit against the stockholders of the bank. One of these stockholders resided in Chatham county, while the suit was brought in the county of Glynn. This court held that "where the corporation is insolvent and has no assets applicable to the payment of its unsecured creditors, one or more of these creditors may bring suit, in behalf of themselves and all others who may choose to come in and be made parties, against all of the stockholders, to enforce their statutory liability and apportion the amount which each should contribute to discharge the claims of the various creditors." In the case now under consideration, the home of the corporation was in Fulton county, a large part of the assets were seized by the court in Fulton county, and quite a number of the defendants against whom substantial relief was prayed resided in Fulton county. The court, therefore, had jurisdiction of this plaintiff in error, and did not err in overruling his demurrer on this ground.

*Judgment affirmed. All the Justices concurring, except Cobb, J., who was disqualified.*