WILKINSON *et al. v.* BERTOCK & CO. *et al.*

1. When the parties on both sides of a case agree, in effect, that all contested questions shall be submitted to the jury to be answered by specific findings; that questions not contested need not be passed upon by the jury, and that upon their findings and the undisputed facts the judge may enter a decree, it is not erroneous, but proper, for him to take into consideration, so far as the same can be legitimately gathered from the pleadings and evidence, all the material facts concerning which the parties are not at issue and give due effect thereto in making up the decree.

2. Shareholders of an insolvent corporation who are indebted to it upon unpaid stock subscriptions and who are also its creditors can not, in defense to an equitable proceeding brought by another creditor in behalf of himself and all the creditors of the corporation to wind up its affairs and, as an incident thereto, subject these shareholders to liability upon such stock subscriptions, set off against the amounts due thereon the debts due to them by the corporation. In such a case, "they must pay up what they owe like other debtors, and then get their dividends like other creditors" when the court distributes the assets among those entitled to the same.

(*a*) The present case is of the nature above indicated.

(*b*) To such a case, the rules governing the right of a stockholder of a corporation to set off a debt due by it to him in defense to a common-law action brought to enforce an individual liability for its debts imposed upon him by statute have no application.

3. An error of calculation which the court committed in the present case is cured by an appropriate direction.

Argued April 30, — Decided July 10, 1900.

Equitable petition. Before Judge Harris. Carroll superior court. April term, 1899.

*Simmons & Corrigan, S. Holderness,* and *W. C. Hodnett,* for plaintiffs in error. *Oscar Reese* and *Robert Zahner,* contra.

LUMPKIN, P. J. The plaintiffs below, F. Bertock & Co., filed an equitable petition against the Wilkinson Paper Co., a corporation, certain named individuals as its stockholders, and others alleged to be acting in collusion with the officers of that company with a view to hindering, delaying, and defrauding its creditors. Petitioners averred that the Paper Company was indebted to them in the sum of $1,171.57, as was evidenced by two promissory notes which were past due and unpaid; that it was hopelessly insolvent; and that with intent to defeat the collection of their just debt it had fraudulently conveyed all its visible assets to the Hutcheson Manufacturing Company for the benefit of certain named persons who held mortgages covering the

property so conveyed. These mortgages were attacked as being without consideration and in fraud of petitioner's rights in the premises. They further alleged that the stockholders of the Paper Company named as defendants had not paid in full their subscriptions to its capital stock, and that accordingly each was in equity liable to account to petitioners and other creditors for the amount of his unpaid subscription. The prayers of the petition were, (1) that judgment in favor of the plaintiffs be rendered against the Paper Company for the full amount of their claim; (2) that a receiver be appointed to take charge of the company's assets fraudulently conveyed by it to the Hutcheson Manufacturing Company; (3) that the stockholders of the Paper Company who had not paid in full their stock subscriptions be required to pay into the hands of the receiver the several amounts respectively due thereon, "for the benefit of the creditors of said company and especially petitioners"; (4) that the deed to the Hutcheson Manufacturing Company and the mortgages above mentioned be canceled; (5) that the receiver be directed to sell the property fraudulently turned over to that company, to the end that the proceeds thus realized might be justly and equitably distributed amongst creditors according to their respective rights as fixed by final decree; and (6) that process issue directed to all the defendants named in the petition. It appears that at the trial the controversy finally narrowed down to a contest between the plaintiffs and the defendants who were stockholders of the Paper Company, as to their liability to account for unpaid stock subscriptions; and they bring the case to this court upon exceptions to a decree based upon a special verdict of the jury which was adverse to them upon this issue.

1. The first attack made upon this decree is, that the trial court erred in rendering judgment in favor of Bertock & Co. for the amount due upon the promissory notes held by them, "because there was no finding in favor of the plaintiffs and against the Wilkinson Paper Co. in the verdict of the jury, and, without a finding by the jury in favor of the plaintiffs, the court had no jurisdiction to render that portion of the decree." That there is no merit in this contention is conclusively established by the following facts which the record before us discloses: So far as appears, the Paper Company interposed no defense to the

action, and none of the plaintiffs in error, each of whom filed a separate answer thereto, undertook to deny the alleged indebtedness of the company or to raise any issue in regard thereto. Furthermore, at the trial Bertock & Co. introduced in evidence the two promissory notes which were the basis of their claim against the company, and no attempt to meet and overcome the prima facie case thus made out was essayed by the plaintiffs in error or by any one of their codefendants. The decree rendered by the court is set forth in full in the bill of exceptions, and contains a recital to the following effect: After argument had, an agreement was entered into between the plaintiffs in error and other parties at interest, that "all contested questions in the case should be submitted to the jury by the court, in the shape of written questions," but "that all other questions in the case necessary to an adjudication of the same, which were not contested and which were outside the written questions, were conceded, and that the judge of said court should decree upon the same without the intervention of a jury." The "Wilkinson Paper Co. was represented in open court, when said agreement was made, by its president" and other officers; "and it being by them conceded," as an admission binding not only upon the company but also upon "themselves as defendants individually, that there was no contest over plaintiffs' demand against the Wilkinson Paper Co.," or over certain other specified matters, "the court, in pursuance of said agreement, submitted" to the jury the questions really at issue. These questions, the bill of exceptions states, are correctly set forth in the decree. None of them remotely referred to the plaintiffs' claim against the Paper Company, notwithstanding they were framed under the following circumstances: "The defense submitted such questions as they desired to have the jury pass upon. The plaintiffs also submitted such questions as they desired to have the jury pass upon. The court revised the questions submitted by both sides, and changed and altered" the same "to meet the views of the court and counsel of both sides," after which revision they were reduced to writing and duly passed upon by the jury. It is to be noted, in this connection, that, as presented to the trial judge for verification, the bill of exceptions contained various recitals as to what

transpired at the hearing, at variance with those above referred to as appearing in the decree of the court with regard to the agreement between the parties; but, before certifying the bill of exceptions, his honor eliminated all conflict in this respect, by striking therefrom all statements not in harmony with those set forth in his decree, being unwilling, evidently, to adopt as true counsel's version as to what was conceded by their clients. In view of this fact, it is somewhat remarkable that counsel pressed before this court their contention that the trial judge improperly rendered judgment against the Paper Company; yet, as they have seen fit to do so, we deal with the point and announce as our conclusion thereon the ruling made in the first headnote.

2. It appeared from evidence introduced in behalf of the defense that, prior to the institution of the plaintiffs' action, M. R. Wilkinson and E. P. McBurney, the principal stockholders of the Paper Company, had advanced out of their individual means large sums of money with which to pay off and discharge various claims against that company which were being pressed by its creditors, and in this manner it had become largely indebted to them.    In one instance suit had been commenced against the company, and payment was made to prevent a judgment being rendered against it.    Some of these claims were based on promissory notes of the company, many of which had been indorsed by McBurney, and others of which bore the personal indorsement of Wilkinson.    In the aggregate, the sums of money each had thus expended in behalf of the company far exceeded the amount of his unpaid stock subscription.    They accordingly sought to defeat any recovery against them in the present action, on the ground that, as accounts stood between themselves and the Paper Company, it was really largely their debtor. The question squarely presented, therefore, is, whether or not, as against Bertock & Co. or other creditors of the corporation, Wilkinson and McBurney were at liberty to plead as a set-off their just demands against the Paper Company.    The reply to this question is to be found in the following extracts taken from Judge Thompson's admirable work on the Law of Corporations (vol. 3, §§ 3785–3787):    "As a corporation is a distinct person in law from each of its members, and as it may sue one of

its members and be sued by him, the same as one natural person may sue another and be sued by him, it follows that in any action by a corporation against one of its stockholders, while the corporation is a going concern, the stockholder has the same right to set off any debt, which may be due to him from the corporation, which he would have if sued by a natural person. And the same rules govern, in determining whether the right of set-off exists, which govern in ordinary actions. A leading one of these rules is that no debts can be set off against each other which are not mutual. . . But the right of set-off resembles, in one respect, the right of rescission for fraud; it ceases as soon as the corporation becomes *insolvent*. . . The stockholder can not, in a proceeding against him by or on behalf of a creditor or creditors, set off a debt due to him by the corporation. Where there is a *general winding-up proceeding*, either by means of a receiver or liquidator appointed under a statute, such as the . . late Federal bankruptcy act, or a State insolvency law, no right of set-off exists in favor of the shareholder, since to allow such a right would be to allow a preference to the shareholders over other creditors. On the contrary, they must pay up what they owe like other debtors, and then get their dividends like other creditors.

"The first reason generally given for the rule denying the right of set-off after a corporation has become insolvent is the theoretical reason which often operates to deny the right of set-off in courts of law, which is, that there can be no set-off unless the *debts* are *mutual* and *in the same right*. Briefly explained, the meaning is, that when the assets have been impressed with the quality of a *trust fund* for the equal benefit of all the creditors, their custodian, whether the corporation, its directors, a receiver, assignee, or other liquidator, holds them, not in the right of the corporation, against which the set-off is claimed, but in right of the creditors." Accordingly, this rule obtains as against a stockholder who is at once both a debtor and a creditor of a corporation, when his "liability is for moneys due on account of stock held by him which has not been fully paid. Such a debt, as we have seen, is deemed in equity a part of the capital stock of the company, and is a trust fund to be devoted to the payment of *all* its creditors; and hence, whilst the com-

pany, as long as it continues a going concern, may call it in, and the stockholder, without doubt, set off against it any demand he may have against the company, yet when the company becomes insolvent and there is not enough to satisfy all its creditors, this trust fund manifestly can not be appropriated by a creditor who is a stockholder to the exclusive payment of his own claim. Substantially the same reasons are held in the English courts of equity. The winding-up acts of that country are framed on the idea of doing justice to creditors by allowing them to share pari passu. By allowing the right of set-off to a shareholder who is a creditor, he thereby obtains a preference over other creditors. . . The disallowance of the right of set-off does the shareholder no injustice, because, if the company is insolvent, he will share pari passu with other creditors; whereas, if there is enough to pay all the debts in full, of course his debt will be paid among the rest, and the right of set-off will not be wanted to do justice between him and the other shareholders."

It is worthy of note that Judge Thompson, before dismissing the subject, adds: "Where the object of the proceeding is to sequester what remains unpaid by the stockholder to the corporation upon his share subscription, and there are no other creditors, then no reason exists why he should not be exonerated to the extent of his demand against the corporation." Ibid. § 3788, citing McAvity *v.* Lincoln Pulp & Paper Co., 82 Me. 504, wherein the contest was wholly between the plaintiff and fellow-stockholders, who were represented by an assignee. That is to say, it is eminently just to allow such a set-off so long as the rights of creditors will not be thereby prejudiced. For illustration, when, as in *Stinson* v. *Williams*, 35 *Ga.* 170, a single creditor of a corporation, without regard to its solvency or to the rights of other creditors, seeks through the aid of a court of equity to subject to the payment of his claim equitable assets of the corporation which can not be reached by the legal process of garnishment, he necessarily predicates his action upon the ground that, as a creditor of the corporation, he is entitled to enforce against a stockholder *its* legal or equitable rights in the premises—not upon the idea that unpaid stock subscriptions constitute a trust fund to be equitably distributed amongst *all* creditors, for he proceeds in behalf of himself alone

with a view to reaping all the benefits sought, to the entire ex-·clusion of every one else. It follows, of course, that there would, in that sort of a case, be no equity in depriving the shareholder of the benefit of any of his defenses as against the corporation itself. Indeed, the only theory upon which such a proceeding can be maintained, says the eminent writer just referred to, in section 3481 of the volume above cited, is, that a "creditor who has exhausted his remedy at law and who seeks the aid of equity is not bound to proceed in behalf of other creditors and to shake the tree in order that they may come in and help him pick up the fruit, and that he has nothing to do with adjusting the equities among the stockholders; but that, having exhausted his remedies at law, he is entitled to the aid of equity to discover and subject to the payment of his debt any assets of the corporation wherever he can find them, whether in the possession of a stockholder or elsewhere." While very properly permitted to bring an action of this character, it does not follow that such creditor will at all events be granted the relief he seeks. On the contrary, "a court of equity will not allow a single creditor to proceed where it appears: 1. That there are other creditors; and 2. That there is not enough for all—in other words, that the particular creditor is endeavoring to use a court of equity as the instrument of getting an advantage over other creditors who stand equal with him in right." Ibid. § 3482. "The *general rule* is, that a creditor who proceeds in chancery to subject the liability of the shareholders of an insolvent corporation must bring his bill on behalf of all other creditors who may come in and establish their debts according to the course of a court of chancery. Whilst liens and legal priorities are preserved, he does not obtain a preference over other creditors by the filing of such a bill, but the property of the corporation, or the sums due from other shareholders in respect to their individual liability, are sequestered for the ratable benefit of all the creditors." Ibid. § 3483.

It is not difficult to properly classify the present proceeding. As will have been perceived from the foregoing preliminary statement of facts, the obvious purpose of the petition filed by Bertock & Co. was to bring about a speedy and equitable "winding-up" of the affairs of the Paper Company. They alleged it

was hopelessly insolvent, and so proved upon the hearing. They prayed for the appointment of a receiver to take charge of all its assets, and that he be empowered and directed to convert the same into cash to the end that there might be an equitable distribution of the proceeds amongst all its creditors. In so far as their petition sought to hold the stockholders of the corporation individually liable for unpaid stock subscriptions, they in direct and unequivocal terms stated their object to be to thus reach a trust fund to be paid into the hands of the receiver "for the benefit of the creditors of said company, and especially petitioners." Therefore, while, perhaps pardonably, chiefly concerned as to their own protection, they at the same time recognized to the fullest extent the right of other creditors to share in the fruits of the litigation. Furthermore, the plaintiffs averred in their petition that they had therein "disclosed the names of the creditors, or alleged creditors, of defendants, so far as [was] within the knowledge of petitioners or their power of ascertaining"; and it appears that at the hearing all creditors concerned in the controversy were properly before the court.

Upon the argument here, counsel for the plaintiffs in error sought to draw an analogy between the present action and that class of cases in which a creditor of an insolvent corporation, basing his right to recover upon a statute imposing upon each of its stockholders a limited individual liability for its debts, brings a common-law action against one or more of them to enforce such statutory liability. In this connection, the cases of *Lane* v. *Harris*, 16 *Ga.* 217; *Robinson* v. *Bank of Darien*, 18 *Ga.* 65, and *Jones* v. *Wiltberger*, 42 *Ga.* 575, were cited in support of the proposition that where a stockholder, prior to the filing of a suit against him, had voluntarily discharged debts of the corporation equal in amount to his statutory liability, he could not be compelled to pay anything more at the instance of a creditor whose claim remained unsatisfied. The case of *Boyd* v. *Hall*, 56 *Ga.* 563, wherein it was ruled that "A bona fide judgment debt of a stockholder against the company in which he holds stock may be set off by him in equity against a suit to make him individually liable in proportion to his stock," was also relied on. None of these cases, or others on the same line which might be cited, can, however, properly be considered as

having any bearing whatever on the question now in hand. The decision in each was predicated upon what this court deemed the proper construction of a statute imposing upon stockholders a liability for *the debts of the corporation*, in the event it should itself be unable to pay the same. In other words, in each instance the court undertook to construe an act of the General Assembly, determine its true intent and meaning, and then give effect to the legislative will with reference to its subject-matter. Whether or not a correct interpretation of these several statutes was arrived at, it is not now pertinent to inquire. On the contrary, it is only necessary to contrast the case at bar, — an equitable proceeding to marshal and administer the assets of an insolvent corporation, — with those in which the rulings relied on were announced. It is not, in the present case, contended that the stockholders of the Paper Company were, under the terms of its charter, individually liable for one dollar of the *company's* debts. Its charter is not in the record before us, but presumably it was such as is usually granted to ordinary private mercantile or manufacturing concerns, and imposed upon its stockholders no statutory individual liability for its debts. Certain it is that Bertock & Co. did not attempt to show any such liability, or to recover anything upon the theory that the plaintiffs in error were under any duty whatever to pay, in whole or in part, the *company's* debts. *Their* debts, and their debts alone, were they called upon to pay — debts which constituted a portion of the assets of an insolvent corporation, and were therefore impressed with a trust raised by law for the equal protection and benefit of *all* its creditors. Civil Code, § 1886; *Dalton R. Co.* v. *McDaniel*, 56 *Ga.* 191; *Turner* v. *Insurance Co.*, 65 *Ga.* 649; *Hamilton* v. *Insurance Co.*, 67 *Ga.* 145, 150; *Beck* v. *Henderson*, 76 *Ga.* 360, 370; *King* v. *Sullivan*, 93 *Ga.* 621, 626. Our attention has not been called to any statute, general or special, wherein the legislature has expressed its will that, as regards debts of this character, the debtor of a corporation shall be left undisturbed and unmolested, provided only he be also its creditor in an equal or in a greater degree. We know of none. It would therefore seem that the familiar rules which obtain in equity procedure should be held to apply in the present case; and it results that the plaintiffs in error

were not entitled .to .a preference over another creditor, the justice of whose claim they do not even pretend to dispute, but voluntarily conceded upon the hearing below.

3. His honor.of the trial bench gave proper direction to the case in this respect, and undertook to prorate the proceeds realized from unpaid stock subscriptions amongst Bertock & Co., Wilkinson, and McBurney, the only creditors of the Paper Company entitled to share in this fund, according to the amount of its indebtedness to each of them, respectively.   It appears, however, that in calculating the amount due upon the various claims held by Wilkinson and McBurney, the court computed interest only from the date the present action was instituted, whereas the evidence discloses that all of these claims had been paid off by and assigned to one or the other of them several months prior to that time.   As direct exception is taken to the decree upon this ground, we have given appropriate direction whereby the error thus committed may be corrected.

*Judgment affirmed, with direction.   All the Justices concurring.*