### SPRATLING *v.* WESTBROOK, trustee.

1. A trustee in bankruptcy of an insolvent corporation may, in one equitable action, recover from any number of the stockholders of the corporation their unpaid stock subscriptions.
2. The petition set forth a cause of action against the demurrant; and his special contract for stock subscription, as therein set forth, was not of such conditional character or on such special terms as would prevent a recovery thereon by the trustee in bankruptcy of the insolvent corporation.

SEPTEMBER 29, 1913.

Complaint. Before Judge Bell. Fulton superior court. May 18, 1912.

*Daley & Chambers,* for plaintiff in error.

*Anderson, Felder, Rountree & Wilson, Brown & Randolph, Parker & Scott,* and *W. S. Dillon,* contra.

FISH, C. J. Westbrook, as trustee in bankruptcy of the consolidated Motor Car Company, an insolvent corporation, brought an equitable petition against Spratling and a number of others, to recover the alleged unpaid stock subscriptions of the corporation. So much of the petition as is necessary for consideration in disposing of the questions made in the record is, in substance, as follows: Each of the defendants is indebted to the corporation for unpaid stock subscription in the amount charged against him. Such indebtedness of all the defendants, except Spratling and one other, is represented by ordinary promissory notes given to the corporation for the amount of stock subscribed, a copy of one of such notes being attached as an exhibit to the petition. Spratling subscribed for 50 shares of the stock of the par value of $100 per share, none

40

of which has been paid (his contract being as set forth in three exhibits, to which special attention will be directed in this opinion). Claims of creditors have been allowed and proved in the court of bankruptcy, to an amount larger than the sum of all of the unpaid subscriptions due by the defendants; and credit was extended to the corporation by its creditors "on the faith of said subscriptions being valid and binding." There was a prayer for the appointment of an auditor to hear and determine the questions of law and fact pertaining to the controversy; and that a recovery be had against each of the defendants for the balance due on his subscription to stock, with interest thereon. Spratling demurred to the petition generally, and because his contract, as appeared from the petition and exhibits, was a conditional one, and he was not bound thereon, as it did not appear that the corporation had performed its part of the contract. He further demurred specially on the grounds that there was a misjoinder of causes of action and of parties defendant. The demurrers were overruled, and he excepted.

1. We will first dispose of the special demurrer, that is, that there was a misjoinder of causes of action and of defendants. The Civil Code, § 2251, declares: "In all suits against members of a private association, joint-stock company,' or the members of existing or dissolved corporations, to recover a debt due by the association, company, or corporation, of which they are or have been members, or for the appropriation of money or funds in their hands to the payment of such debt, the plaintiff or complainant in such suit may institute the same, and proceed to judgment therein against all or any one or more of the members of such association, company, or corporation, or any other person liable, and recover of the member or members sued the amount of unpaid stock in his hands, or other indebtedness of each member or members: Provided, the same does not exceed the amount of the plaintiff's debt against such association, company, or corporation; and if it exceed such debt, then so much only as will be sufficient to satisfy such debt." This section is in the same language as that of the Code of 1863, § 3279, which was a codification of the act of 1856 (Acts 1855-6, p. 220), and which was incorporated in all subsequent codes. In *Dalton & Morganton R. Co.* v. *McDaniel,* 56 *Ga.* 191, the action was brought by McDaniel in behalf of himself and

many others, who were duly made parties complainant, as creditors of the Dalton & Morganton Railroad Company, to compel Carter and a great many others, amounting to several hundred stockholders of the company, to pay in a sufficient amount of the stock subscribed for by them to satisfy certain judgments and debts which the company owed complainants. The bill was demurred to on the grounds, among others, that it was improperly brought against defendants jointly, and that it was multifarious. It was held that the demurrers were not meritorious, and in support of the ruling the Code of 1873, § 3367, was cited, the language of such section being the same as that of the Code of 1863, § 3279, and which is now embodied in the Civil Code (1910), § 2251. There were also cited, among other cases, *Hightower* v. *Thornton*, 8 *Ga.* 486 (52 Am. D. 412), and *Stinson* v. *Williams*, 35 *Ga.* 171. The ruling made in *Dalton &c. R. Co.* v. *McDaniel*, supra, has been recognized or followed in a number of subsequent decisions rendered by this court. See *Brobston* v. *Downing*, 95 *Ga.* 505 (22 S. E. 277); *Boyd* v. *Robinson*, 104 *Ga.* 793 (3), 794 (31 S. E. 29); *Moore* v. *Ripley*, 106 *Ga.* 556 (3), 557 (32 S. E. 647); *Wilkinson* v. *Bertock*, 111 *Ga.* 187 (2), 190 (36 S. E. 623); *Harrell* v. *Blount*, 112 *Ga.* 711 (4), 717 (38 S. E. 56); *Morgan* v. *Gibian*, 115 *Ga.* 145 (41 S. E. 495); *Commercial Bank of Augusta* v. *Warthen*, 119 *Ga.* 990 (2, 3), 993 (47 S. E. 536); *Allen* v. *Grant*, 122 *Ga.* 552 (50 S. E. 494). The action was properly brought by the trustee in bankruptcy. *Morgan* v. *Gibian*, and *Commercial Bank of Augusta* v. *Warthen*, supra. It follows that the court did not err in overruling the special demurrers.

2. Nor do we think there was any merit in the demurrer that the petition set forth no cause of action, and that the contract of Spratling, as set forth in the exhibits, was a conditional one, and that there was no obligation on the part of Spratling to perform it where it appeared that the corporation had not performed its obligation under such contract. The doctrine is well settled in this State that all the property and assets of an insolvent corporation constitute a fund—first, for the payment of its debts, and then for equal distribution among its stockholders. The Civil Code, § 2245, declares this to be true in the case of the dissolution of a corporation, and the cases cited in the first division of this opinion apply the same rule in reference to insolvent corporations. It is every-

where well recognized that unpaid subscriptions to the capital stock of a corporation constitute part of its assets. Capital stock is largely the basis of the credit of the corporation, and persons dealing with the corporation have the right to look to the authorized capital stock as a fund for the payment of their debts. 3 Clark & Marshall on Private Corporations, § 792. See *Hightower* v. *Thornton, Stinson* v. *Williams, Dalton &c. R. Co.* v. *McDaniel,* and *Allen* v. *Grant,* supra. The petition alleged that Spratling had subscribed for 50 shares of the capital stock of the Consolidated Motor Car Company, of which the plaintiff was the trustee in bankruptcy, at the price of $100 per share; that he had paid no part of his subscription, and was indebted to such company in the sum of $5,000, and that it was necessary to collect the whole of this subscription in order to pay the outstanding debts of the corporation. This allegation, if it stood alone, would of course have set out a cause of action. It is contended, however, that the contract of Spratling, as shown by the exhibits attached to the petition, was a conditional subscription, and that the corporation had never complied with the condition assumed by it in the contract, and therefore Spratling was not liable. The demurrer stated in general terms that the contract was a conditional one, and it does not appear from the demurrer, or from the brief of counsel for plaintiff in error, what the conditions were. From the exhibits attached to the petition it appears that the contract between the corporation and Spratling, entered into November 8, 1910, and to become effective January 1, 1911, was to the following effect: Spratling "being elected president of and by" the corporation at a salary of $2,400 a year, $200 of which were to be paid monthly during the continuance of the contract, agreed to subscribe for 50 shares of the capital stock of the corporation of the par value of $100, which shares were to be paid for as follows: A certificate for 25 shares of such stock was to be issued to Spratling, for which he was to give his note for $2,500, due six months after date. Upon the maturity of the note he was to pay $200, "same being part of the salary earned by him as president of said company, and also all dividends that may be earned by his said stock, and as much more as possible," the corporation agreeing to renew the note, upon its maturity, for six months, "and to continue to make such renewals on the same terms every six months until said notes are fully paid

up. The $2,500 remainder of said stock to be issued as per applications secured by party of the second part [Spratling] from other parties, for which, as secured, a note or notes are to be given by said second party, due in twelve months from date, and on which as same mature the notes of such applicant stockholders as are secured by said second party are to be applied as payments as same are paid, until said amount is fully paid up." It was further agreed that the contract might be terminated by either party to it giving the other 30 days notice, and by restoring the other party, "so far as the financial part of this contract is concerned, to the position they were in prior to the making of the same." There also appeared as an exhibit a copy of a note of date November 9, 1910, given by Spratling to the corporation, for $2,500 due 14 months after date, with interest from date at 7 per cent. per annum. A copy of the following agreement was also attached as an exhibit to the petition:

"Jan. 6th, 1911.

"Consolidated Motor Car Co., Inc. Atlanta, Ga.

"Gentlemen: Upon the statements made me by Mr. Frank M. Myers Jr., your vice president and general manager, who went thoroughly into the present financial conditions of your company, I agreed with him you could not now afford to pay me the $200.00 per month beginning Jan. 1st, as my contract with you called for. But, if agreeable to you, I am willing to accept the presidency of your company, giving you what time I can spare, at $100 per month, and with the assistance of Mr. W. T. Dregger agree to sell $2,500.00 worth of stock by July 1st, the sale of which stock to be credited on my note given you Nov. 8th, last, as spoken of in our contract of that date. Each sale as made to be credited on said note until same is paid in full. Provided that you agree to carry out your contract with me made Nov. 8th, last, as soon as you raise enough money from the sale of stock to carry sufficient stock of cars and accessories to carry on the business. It is to be further understood and agreed that the original contract made Nov. 8th, 1910, is only to be annulled as is provided herein; and that same is to be carried out as originally set forth, except in so far as it is herein modified.

"Yours very truly, F. J. Spratling.

"Accepted. Consolidated Motor Car Co.

"F. M. Myers Jr., Vice Pres. & Gen. Mgr."

It does not appear that Spratling ever gave his note for the $2,500, as the price of the 25 shares for which a certificate was to be issued to him, which note was to be payable six months after date, nor does it clearly appear for what he gave the note dated November 9, 1910, and due fourteen months after date. Spratling's contract, as set forth in the exhibits, was one on special terms. The agreement of the corporation to elect Spratling as its president and to continue him as such until his payment of $200 at the end of each six months out of his salary should satisfy or extinguish the price—$2,500—for the 25 shares of stock, for which a certificate should be issued to him, and the peculiar arrangement as to the disposition of and as to the payment for the other 25 shares, for which no certificate was to be issued to him, and the further agreement that the whole contract might be terminated by either party to it giving 30 days notice, constituted a special agreement for the sale of the 50 shares of stock to Spratling, upon special terms. Such an agreement was unfair to other subscribers and to the creditors of the corporation, who had a right to assume that Spratling was a bona fide subscriber, unconditionally and without special terms, for 50 shares of stock; and whatever right he may have had, in an action by the corporation against him for his subscription, to set up his special contract as a defense, he could not do this in the equitable action brought by the trustee in bankruptcy of the corporation against him for the benefit of its creditors. See *Fouché* v. *Merchants National Bank of Rome*, 110 *Ga.* 827, 841 (36 S. E. 256), where the following cases are cited: Camden *v.* Stewart, 144 U. S. 104 (12 Sup. Ct. 585, 36 L. ed 363) ; Potts *v.* Wallace, 146 U. S. 689 (13 Sup. Ct. 196, 36 L. ed. 1135) ; Richardson *v.* Green, 133 U. S. 30 (10 Sup. Ct. 280, 33 L. ed. 516). "In general. A subscription upon special terms is an absolute and unconditional subscription, which makes the subscriber a stockholder, and renders him liable as such, and for the amount of the subscription, as soon as it is accepted, but contains special terms or stipulations. Such a subscription is valid, provided the special terms or stipulations are not such as to constitute a fraud upon the other subscribers or stockholders, or upon the creditors of the corporation, and provided they are not beyond the powers conferred upon the corporation by its charter, nor contrary to law." 2 Clark & Marshall, Priv. Corp. § 465. In a subscription for

stock on special terms, performance of the stipulations by the corporation is not a condition precedent to liability on the part of the subscriber, but is an independent or collateral agreement, for a breach of which the corporation will be liable in damages. Ib. § 466. "An agreement by which a purchaser of stock may at his option, at the end of a certain time, return the stock and receive back the price, is in the nature of a conditional sale, with an option to the purchaser to rescind; and if the rights of creditors are not involved, it is valid." Ib. § 467a. "A corporation has no authority to accept subscriptions upon special terms, where the terms are such as to constitute a [legal] fraud upon the other subscribers, or upon persons who may become creditors of the corporation in reliance upon a bona fide and regular subscription of the authorized capital stock. In such a case, however, the subscription is not void. [Such] stipulations are void, and the subscriber is liable on his subscription as if no such stipulations had been inserted. It has been held, therefore, in many cases, that any secret agreement between a subscriber for stock in a corporation and the corporation or its agents or promoters, by which he is allowed to subscribe upon different terms than other subscribers, since it is a fraud upon the latter, and any secret agreement by which he is to be released in whole or in part from liability on his subscription, since it is a fraud both upon the other subscribers and upon persons who afterwards become creditors of the corporation, is void, and the subscription may be enforced by the corporation, or by or for the benefit of creditors, as if no such agreement had been made." Ib. § 467c.

The mere fact that no certificate was to be issued to Spratling for 25 shares of the stock for which he subscribed did not prevent him from being a stockholder of the whole 50 shares, nor relieve him from liability as a stockholder. 2 Clark & Marshall on Private Corp. §§ 378, 462d; 1 Cook on Corp. § 192; 1 Thomp. Corp. § 548.

It follows from what has been said, that the judgment of the trial court in overruling the demurrers to the petition must be affirmed.          *Judgment affirmed. All the Justices concur.*