### GREER *et al. v.* JACKSON, receiver.

1. The court did not err in overruling the 19th ground of the demurrer, as follows: "This defendant demurs specially to the 1st, 2nd, 3rd, and 6th paragraphs of the plaintiff's petition, because the same fails to set forth or exhibit the court proceedings and orders under which he claims to be acting and which he alleges supply his authority for bringing and prosecuting said suit."
2. Where a receiver of a corporation is appointed at the suit of a shareholder proceeding on his own behalf and on behalf of other stockholders, and not on behalf of creditors, such receiver can not in one suit proceed against all of those who have not paid their subscriptions.
3. It was error not to sustain the grounds of demurrer relating to the venue of the action, and to misjoinder of parties.
4. The foregoing rulings render it unnecessary to pass upon the overruling of the other grounds of demurrer.

JANUARY 11, 1917. REHEARING DENIED FEBRUARY 16, 1917.

Action on stock subscription. Before Judge Pendleton. Fulton superior court. November 15, 1915.

*Atkinson & Born, H. C. Peeples, Dillon & Burress, H. W. Dent,* and *Owens Johnson,* for plaintiffs in error.

*Jones & Chambers* and *Anderson, Slate & D'Orr,* contra.

GILBERT, J. On April 16, 1914, the Poplar Lodge Company filed in the superior court of Fulton county a petition against the Union Trust Company, alleging that both were corporations, that petitioner was a stockholder in the latter, and that the petition was on behalf of the plaintiff and "on behalf of all others similarly situated who may hereafter elect to join herein." The other allegations of the petition were in substance as follows: The defendant company was chartered by the Secretary of State, with an authorized capital of $100,000, and its charter was subsequently so amended as to authorize a capital stock of $1,000,000. The defendant placed its stock on the market and sold $100,000 worth, "or other large sum," by a stock salesman. The salesman was paid 25 per cent. for his services. Very little of the stock was ever paid

for. Such payments as were made in most instances were one third cash and notes for the balance. Practically all of the cash went into the pockets of the salesman. A great part of the notes were due, and payment was refused, the subscribers claiming misrepresentation, and that the officers were making no bona fide effort to collect the subscriptions. A great many stockholders were demanding that their subscriptions be canceled and their notes returned, threatening receivership proceedings on refusal. Stockholders who exchanged real estate for stock were threatening receivership proceedings unless their purchases were rescinded. The purpose of the organization was to do a mortgage loan and trust business. The company is earning very little. The officers are grossly mismanaging the business. While earning practically nothing, the expenses are $1800 per month. Mismanagement and reckless expenditures are inflicting injury to stockholders and creditors of the company. Under existing conditions, by reason of dissension among stockholders success of the company is impossible; and unless a court of equity intervenes, stockholders and creditors will suffer irreparable injury. The officers are managing the affairs of the company in their own interest, and opposed to the interest of the stockholders. The prayers were for equitable relief, including the appointment of a receiver. After a hearing the court appointed A. W. Jackson permanent receiver of the Union Trust Company.

The receiver filed a petition setting forth the following facts: He had collected in all assets, and paid out the same, leaving no funds on hand. The company has numerous unsecured creditors, "the aggregate amount thereof being *about* $5000." The company owed the receiver and counsel representing "petitioning creditors" a sum undetermined. The unpaid subscriptions amounted to *about* $100,000. The unpaid subscriptions are assets of the company for the payment of debts. The receiver was advised that a great many of the subscriptions were insolvent. The subscribers reside in different counties, and in order to do complete equity it is necessary to bring all subscribers before this court. The prayer was for an order authorizing the receiver to file suits against all subscribers for their unpaid subscriptions in the superior court of Fulton county. The court passed an order authorizing the receiver to file the suits, providing how they should be served, requir-

ing all defendants to file appearances at a named term of Fulton superior court, and directing that "when said suit is filed as hereunder ordered the same shall be considered with and made a part of the original bill now pending in this court of Poplar Lodge Company *v.* Union Trust Company." Suit was filed by the receiver against a large number of subscribers, among whom was R. L. Greer. No formal order was taken consolidating this suit with the original suit. R. L. Greer entered his special appearance and moved to dismiss the suit of the receiver, relatively to himself, upon the ground that he does not reside in Fulton county, but does reside in Macon county; for lack of privity between himself and any of the codefendants; and because the superior court of Macon county alone would have jurisdiction of the movant. Greer also filed general and special demurrers based upon nineteen grounds, subsequently amended by adding a twentieth.

The court overruled the motion to dismiss, and the general and special demurrers as originally filed, on all of the grounds therein taken. The ground of demurrer added by amendment was sustained. Greer excepted. There is no exception to the judgment sustaining the demurrer as to the ground added by amendment, though the briefs of counsel for the defendant in error refer to such a bill of exceptions.

It will conduce to a clearer understanding of the conclusions reached in this case to state, at the outset, that this is not a suit by creditors to collect debts due by the defendant corporation. Nor can it be said that it is a suit in their behalf or for their benefit. The parent suit is brought by a stockholder of a corporation, and the language of the petition permits of no doubt as to its purpose. It alleges in unmistakable terms that the suit is brought "on its own behalf, and on behalf of all others similarly situated who may hereafter elect to join therein." Save stockholders, there are no others similarly situated. The petition seeks to enjoin the officers from changing the status of the stock and stock subscriptions, and to have the court take charge and administer the affairs and assets and disburse the same through a receiver of its own appointment. This is the alpha and omega, the beginning and the end, of the projected juridical journey.

1. The nineteenth ground of the demurrer complains that the petition "fails to set forth or exhibit the court proceedings and

orders under which he claims to be acting, and which he alleges supply his authority for bringing and prosecuting said suit." Undoubtedly it would have been better practice in the sense of exactness to have made such exhibits, but formality must yield to utility. The trial court had the entire proceedings before it, and treated the same as one case, and looked to the whole in entering judgment on the demurrer. The order of the court authorizing suit recited that "when said suit is filed as herein ordered, the same shall be consolidated with and made a part of the original bill and suit now pending in this court of Poplar Lodge Company v. Union Trust Company." Tested by the rule of reason, it does no violence to construe this order as resulting in a consolidation as soon as the subsequent proceedings were filed. Besides, on a broader principle, it would conserve no useful purpose, be the cord that binds never so slender, to sever the harmonious whole into separate units. Law has its origin in wisdom and prudence, and, "when practicable, it will conserve its own work, the work of its magistrates and ministers, and that of suitors in its court, and their counsel." This demurrer was therefore properly overruled.

2, 3. The petition is silent as to the identity of the creditors, and the amount due to each. For all the court may know, the entire amount of indebtedness may be that due to the officers who are charged with mismanaging the company's affairs in their own interest and opposed to the interest of the stockholders, and for court expenses incurred by reason of the litigation now under consideration. Nothing is more certain than that the record discloses no single creditor, nor any combination of creditors, moving to collect debts due by the Union Trust Company. In so far as the record speaks, if there be any creditor, he has not concerned himself about collecting his debt. He is not included as a petitioner, and the petition makes no provision for his inclusion in the future. There was a special demurrer in this case, calling for detailed information in regard to the identity of the creditors and the amounts due them. This demurrer should have been sustained by the trial court. However, we have not placed the reversal of this case upon the failure of the court to sustain this special demurrer, because, if this defect had been cured by amendment, it would not be sufficient to restore the life of the petition as to Greer.

Properly considered, it is impossible to learn from the petition of the Poplar Lodge Company what is the purpose of collecting in the unpaid subscriptions, if such there be. This petition does not allege that the sums sought to be collected are to be used in the due course of business. Indeed, the very opposite would seem a necessary conclusion, since the allegations in regard to the mismanagement, and the dissensions, and the attitude of the stockholders, all would presage business chaos.

It was error to overrule the motion of the defendant, Greer, raising the question of venue, and his special demurrer complaining of misjoinder. Section 2251 of the Civil Code of 1910, relied upon by the defendant in error, has application to suits of a totally different character. It applies to suits "to recover a debt due *by*" corporations. It is for the benefit of creditors in each case. No principle is more firmly established, as well in law and equity as in reason and justice, than that the capital stock, including unpaid stock subscriptions, is an asset of a corporation, and constitutes a trust fund for the payment of its debts. This code section, while authorizing a joint suit in cases to which it is applicable, also provides that the recovery must not exceed the amount of the debt sued for, thus excluding from its purpose and authority suits by a corporation against its subscribers on their subscription contracts. The right of a corporation to sue on contracts for unpaid stock subscriptions is undeniable. *Hendrix* v. *Academy of Music,* 73 *Ga.* 437. We do not rule that a proper suit could not legally proceed against Greer, had it been filed in the county of his residence.

In Hale *v.* Allinson, 188 U. S. 56, 77 (23 Sup. Ct. 244, 47 L. ed. 380), the court said: "The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff, and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction." Continuing, the court argues as follows: "Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the

relief sought by the receiver against each defendant. The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only a part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except that there is a common plaintiff, who has similar claims against many persons. But as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his codefendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability. Suppose A to aver that his signature to the subscription list was a forgery; what connection has that averment with B's contention, that his subscription was made by an agent who had exceeded his powers? or with C's defense, that his subscription was obtained by fraudulent representations? or with D's defense, that he has discharged his full liability by a voluntary payment to the receiver himself? or with E's defense, that he has paid to a creditor of the corporation a larger sum than is now demanded? These are separate and individual defenses, having nothing in common; and upon each the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and expensive to award him his constitutional right. . . The costs of witnesses will not in any degree be diminished; and if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law."

Defendants in error present a formidable array of authorities for the purpose of sustaining their contention in regard to jurisdiction. *Hightower* v. *Thornton*, 8 *Ga.* 486 (52 Am. D. 412); *Dalton etc. Railroad Co.* v. *McDaniel*, 56 *Ga.* 191; *Boyd* v. *Robinson*, 104 *Ga.* 793, 802 (31 S. E. 29); *Morgan* v. *Gibian*, 115 *Ga.* 145 (41 S. E. 495); *Allen* v. *Grant*, 122 *Ga.* 552, 558 (50 S. E. 494); *Spratling* v. *Westbrook*, 140 *Ga.* 625 (79 S. E. 536). To these might have been added *Carlisle* v. *Ottley*, 143 *Ga.* 797 (85

S. E. 1010), and *Chappell* v. *Lowe,* 145 *Ga.* 717 (89 S. E. 777). An examination of these authorities will show that in every case the suit was brought by a creditor, or by some person such as a trustee in bankruptcy, as representative of a creditor; and all of them are in perfect harmony with the provisions of section 2251 of the Code of 1910. The authorities relied upon are therefore not applicable to the facts of this case.

On the other hand, counsel for the plaintiff in error have requested us to review and overrule the decisions in *Allen* v. *Grant, Spratling* v. *Westbrook,* and *Carlisle* v. *Ottley,* supra. This request has been previously made and refused by this court in a case to which they were applicable. *Chappell* v. *Lowe,* supra. As already pointed out, however, they have no application to the facts of this case.

4. The effect of the foregoing rulings is to render it unnecessary to pass upon the overruling of the other grounds of demurrer.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*