STATE OF MISSOURI ex rel. GRAY, etc., Respondent, v. PHOENIX LOAN ASS'N, Defendant; FRANK SCARPACI, Intervenor, Appellant.

Kansas City Court of Appeals, December 17, 1900.

Building and Loan Association: CERTIFICATE OF INDEBTEDNESS: STOCK: PRIORITY OF PAYMENT. A written instrument issued by a building and loan association, and set out in the opinion, is construed in connection with the by-laws and course of business of the association, and is held to be not a certificate of stock, but an obligation for the direct payment of money creating the relation of debtor and creditor and entitled to priority of payment before distributing the assets of the insolvent association to its stockholders.

Appeal from the Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

REVERSED AND REMANDED (*with directions*).

*Culver & Phillip* for appellant.

(1)    The certificate is but an obligation to pay and its holder but a creditor of the association is too plain for argument.    Cook v. B. & L. Ass'n, 30 S. E. Rep. 911; Grohmann v. Brown, 68 Mo. App. 630; Dickenson v. Trust Co., 52 N. Y. S. 672.    (2)    Upon its face it is but a promissory note. It contains every element of a promissory note.    It has not a single element of capital stock of a building and loan association.    Norton on Bills and Notes, sec. 13; Edwards on Bills and Notes, sec. 134; Daniel on Neg. Instr., sec. 28.

*O. M. Spencer, B. J. Woodson* and *Huston & Brewster* for respondents.

(1)    The paper issued to Catalana created the relation of shareholder.    Towle v. Ass'n, 75 Fed. Rep. 938; Hoenshell v. Ass'n, 140 Mo. 566, loc. cit. 579; Latimer v. Inv. Co., 81 Fed. Rep. 776; State v. Inv. Co., 142 Mo. 326, loc. cit. 342; Bertche v. Inv. Co., 147 Mo. 343; State ex rel. v. Ass'n, 78 Mo. App. 104.    (2)    The association had power under the law to issue paid up stock.    Thompson on B. & L. Ass'n (2 Ed.), secs. 130, 131, 132; Lester v. Ass'n, 38 Md. 115; also cases cited under 1 *supra*.    (3)    The certificate does not confer preferential rights upon the holder in case the concern becomes insolvent, because the association could not issue preferential stock.    Latimer v. Inv. Co., 81 Fed. Rep. 776; State v. Inv. Co., 142 Mo. 326; Towle v. Ass'n, 75 Fed. Rep. 938; Hoenshell v. Ass'n, 140 Mo. 566; Bertche v. Inv. Co., 147

Mo. 343; sec. 10, art. 12, Const. of Mo.; Forwood v. Eubank, 50 S. W. Rep. 255; Brown v. Archer, 62 Mo. App. 278; Christians' App., 102 Pa. St. 188; Ass'n v. Sparling, 15 W. N. C. (Pa.) 340.

SMITH, P. J.—The Phoenix Loan Association was organized under our statute, but is insolvent and in the hands of receivers. The circuit court appointed a referee to adjust the demands against the defunct. The intervenor, Scarpaci, presented to the referee for allowance the following written instrument.

### "No. 444.

"This is to certify that Mary Catalana is entitled to shares of series B of the capital stock of the Phoenix Loan Association of St. Joseph, Missouri, on which there has been paid by him the sum of one thousand dollars ($1,000). The holder of this certificate is entitled to interest on said sum from date hereof at the rate of six per cent per annum, payable semi-annually, at the office of said association in the city of St. Joseph, Missouri. This certificate is redeemable at its face value in accordance with the by-laws and its terms. The holder of this certificate by its acceptance and in consideration of the contract and obligation on the part of said association therein contained, waives and releases all right, interest and benefit of said shares in and to the earnings and profits of said association over and above the said semi-annual interest, and hereby transfers and assigns all such excess of earnings and profits, if any, to said association and waives the right to demand the redemption of this certificate at any time within one year from the date hereof.

"Dated, October 6, 1892.

"Signed. William H. Carpenter, President."

The instrument was assigned by Mrs. Catalana to Scarpaci. The referee allowed the same for the amount of the principal and interest but denied any preference in the payment thereof over any of the stockholders of the defunct, and this was sanctioned by the court below.

Scarpaci contends that the instrument is not a certificate of stock in the defunct, but an obligation for the direct payment of money and that, therefore, as a holder thereof, he is entitled to a preference in payment over the stockholders. The receivers, on the other hand, insist that the certificate is but a certificate for full paid up stock in the association and that, therefore, the relation of Mrs. Catalana to the defunct was that of a shareholder having no preferential rights over other shareholders. If Scarpaci sustains the relation of creditor to the defunct then manifestly he is entitled to a preference of payment over the shareholder, but if his relation is that of shareholder or the assignee of a shareholder he is not.

Section 5 of article 3 of the by-laws of defunct provides that the certificates of the capital stock shall be issued in two series to be called respectively "Missouri Issue" and "Class A," and that the series to which each certificate belongs shall be plainly designated thereon. Section 6 provides that the capital stock shall be payable in monthly instalments of fifty cents upon each hundred dollars expressed upon the face of the certificate. And (section 7) when one hundred monthly payments have been made upon any stock, either as they become due or in advance, and one hundred full months shall have elapsed from the date on which the first of said monthly payments have become due, according to the terms of the subscription therefor, all further liability for payments and rights to participate in the subsequent profits shall cease and said stock shall be deemed as matured and shall be considered as filed for redemption, etc. It is further provided in section 8

that the withdrawal value of the stock shall be the amount of dues paid in to maintain the stock, together with a proportion of the profits already earned, equal to six per cent per annum, etc. By section 12 of an amendment to said article 3, it is provided that any shareholder may pay dues on his stock in advance and on such payments a discount of six per cent per annum may be allowed. And it is further provided in the said last referred to section that, "should any member at the time of subscribing pay in advance the total amount of monthly installments for the full one hundred months without discount he shall be entitled, in lieu of such discount, to receive interest on dues paid in advance at such rate as may be fixed by the board of directors, and special certificates may be issued to such members. All such stock shall participate in the earnings to the same extent and be redeemed in the same manner as though dues had not been paid in advance."

The several provisions of the by-laws just quoted relate to the issue of two kinds of stock. One on which the dues thereon are to be paid monthly and the other in advance. · The certificate here shows on its face that it was not issued for either kind of stock. The subscribers for either are entitled under said by-laws to participate in the earnings, but not so as to the holder of this certificate. No fact is recited in this certificate showing that it was issued under the by-laws of the defunct. And our attention has been called to no provision of the by-laws authorizing any other kind of stock than that already specified.

But by reference to sections one and two of article 4, of said by-laws, it is provided that there shall be issued a series of paid up interest bearing certificates to be denominated "Series B," and that such certificates shall be issued *only for* "*cash paid in*" and shall bear interest not exceeding eight per cent per annum. And that such certificates to be re-

deemable at the time therein fixed by the payment to the holders the amount thereof with interest in the same manner *as capital stock* except that in all cases sixty days' notice shall be required to be given by the owners of the intention to present for redemption; and that the holders of such certificates are not entitled to participate in the profits other than to the extent of the interest stipulated to be paid. The only authority anywhere to be found in the by-laws of the defunct is that conferred by the provisions of said article 4 just referred to. By that article it is expressly provided that the payee in the certificate is not to participate in the profits. The stipulation in the certificate to the effect that the payee *waives,* releases and assigns his interest in the earnings and profits is the waiver, release and assignment of no right to which he is entitled under the by-laws authorizing the issue of the certificate. The provision that he waives the right to demand the redemption at any time within a year, postpones its redemption until after the expiration of a year from its date.

The very language employed in said article 4 shows that the certificates authorized by it were to be distinguished from *stock* certificates, for it provides that such certificates shall be redeemed in the same manner as *capital stock* except as to the notice to be given of the intention to present for redemption. These certificates are not to be redeemed in the same manner and on the same condition as *other capital stock,* but in the same manner and on the same condition as *capital stock.* As has been seen, a holder of either kind of stock is entitled, under the by-laws, to participate in the profits and earnings while the holder of a certificate is not. The provision in the certificate to the effect that the payee therein released, waived and assigned all her rights to participate in the profits does not show her to be a shareholder. She was neither benefited nor injured by it. The certificate must be considered as if it contained no such provision.

Looking at the scheme and scope of the by-laws of the defunct it becomes clear that the certificates of capital stock and those for *money paid* were not one and the same thing. The former were authorized to be issued to those subscribing for the matured or unmatured stock while the latter were to issue to those *paying in* or, which is the same thing, depositing money on time with the defunct. It was, as we think, never contemplated by the by-laws that one *"paying in"* money and taking the certificate authorized by said article 4 should thereby become a shareholder. The holder of one of these certificates has no interest in the profits or losses of the association. It can never be under any obligation to pay him more than it has actually received from him with interest, nor can it discharge its obligation to him by paying less. It is quite impossible to distinguish it from any other case of borrowing and lending money. It is no more than a case where money has been borrowed payable on sixty days notice after a certain period. It is idle to contend that the transaction was that of subscribing and paying for capital stock. Nothing of the kind was in the contemplation of the parties at the time.

It appears that the defunct, while a "going concern," issued interest bearing certificates like that here, amounting to $187,921.88, all of which were paid off except about $8,998.10 still outstanding. It is to be inferred that such certificates were issued for any amount *paid in* whether great or small, for it appears among those issued was one for only $3.10. The shares of stock were for four hundred dollars each. It is inconceivable that the shares of stock were sold in "vulgar fractions," or that one *paying in* three dollars and ten cents and taking therefor the kind of certificate here, should be to that extent a shareholder. The officers in charge of the business of the defunct certainly did not understand that these interest certificates were stock certificates belonging to either one of the

series and authorized by the laws, for it appears that the "Missouri Issue" and "Class A" stock accounts were kept in a book entitled "Stock Ledger A," while the said interest certificates, "Series B," were kept in a book entitled "Full Paid Deposit Stock." "Series B" and "Full Paid Deposit Stock" are one and the same, but no stock of this kind under either designation is authorized by the by-laws.

The books of the defunct do not show that the persons to whom interest certificates were issued were charged a membership fee, yet the by-laws require the exaction of such fees of all those subscribing stock. This circumstance, although apparently trivial in itself, goes to further support the inference that the officers and managers of the defunct did not understand that the holders of these certificates were shareholders or members within the meaning of the by-laws, or else they would have exacted membership fees of them as they did of those subscribing for the stock of "Class A" and "Missouri Issue."

In Endlich on Building Associations, section 56, it is stated: "There is, where it is permitted by law to exist, a class known as "depositors"—persons who, without fully entering the circle of the society's membership, and becoming liable to all its duties, and sharing in all its benefits, use its treasury as a savings bank, in which to deposit, from time to time, small sums of money, with the privilege of drawing them, at their pleasure, thereafter, under certain restrictions, and with the addition of interest at a certain moderate rate. These people are not properly members."

And for the like reasons the holders of the interest certificates here are not properly members. As said by us in the similar case of Grohmann v. Brown, 68 Mo. App. 634: "The claimant by the deposit of her money did not contract for the issue to her of any of the kinds of stock which the association

was authorized to issue. She did not participate in any way in the management of the association; she was not entitled to share in the profits of the association, nor as a stockholder had she any right to any part of its ultimate assets." And this is true as to Mrs. Catalana and her assignee. Mrs. Catalana paid in her money for which she received not a certificate of stock of either kind the association was authorized to issue, but a promise to return the exact sum paid in with interest at any time after one year upon receipt of thirty days notice.

This certificate, by whatever name it may be called, is, as we think, nothing more nor less than an obligation for the direct payment of money at a specified time; and by the transaction evidenced by the said certificate the relation of debtor and creditor was created. We have examined with much care the several authorities cited and relied on by the receivers to sustain their contention, but do not find any of them are applicable in a case like this. Our conclusion is that both the referee and the court erred and that the claimant's demand should be payable out of the assets of the defunct association ahead of the claims of shareholders as such; and, therefore, the judgment will be reversed and cause remanded, to be proceeded with in accordance with the conclusions which we have herein expressed. All concur.