In the Matter of the Receivership of NATIONAL BUILDING LOAN AND PROVIDENT ASSOCIATION.

*New Castle, June 4, 1919.*

The theory of a building and loan association is that all the members pay in money in installments, together with dues, and that some, at least, borrow money from the association, and that the payment of dues and interest continues until the accumulation is such that each share reaches a fixed sum.

The power of members of building and loan associations to withdraw before the accumulation of dues and interest is such that each share reaches a fixed sum, is a privilege or concession given for expedience, and is a variation of the general plan of such associations.

Member of building and loan association cannot withdraw from association without complying with the conditions of withdrawal imposed by statutes or by-laws.

Privilege of withdrawal from building and loan association given member by by-laws is a right enforceable by an action at law.

Judgment against building and loan association in favor of withdrawal certificate holder is conclusive as to any defense which could have been interposed by association in suit on the certificate.

In suit against building and loan association on withdrawal certificate, insolvency of association would be a bar to a recovery in full, for the mutuality involved in the scheme of the organization requires that each member should bear his share of the losses.

Withdrawing member who obtains judgment against building and loan association for amount due him becomes a creditor of the association, and is entitled to payment in preference to the members, though at time of notice of withdrawal and thereafter the association was insolvent and its affairs were afterwards wound up by a receiver.

Judgment liens on real estate of building and loan association acquired before receivership were properly transferred to the proceeds of the sale of the real estate on sale by receiver.

Holders of full-paid or investment stock of building and loan association who paid lump sum for stock at time of purchase, with right to be paid fixed amount at fixed time, at fixed rate of interest, with no right to participate in profits or in management of association, though called stockholders, were in legal effect creditors.

STATEMENT OF THE CASE.    A receiver was appointed to wind up the affairs of the National Building  Loan & Provident Association, and its assets including certain real estate were sold and collected.    There were several judgments against the association, which were liens on its real estate; and there were four other classes of persons who had filed claims against the assets of the association, viz.:  holders of withdrawal certificates, of full-paid certificates, of full-paid stock, and certificates of stock.

The recommendation of the receiver was that the proceeds of the sale of the real estate be applied to the judgments according to their priority.    It was further recommended that the other assets of the association be applied to the judgment creditors whose debts were not paid in full from the real estate and holders of withdrawal certificates, taken together as one class, and the balance, if any, paid to the other claim holders.

Notice of the report having been given to those who had filed claims, and no exception to the report or recommendations having been taken, an order was made on October 9, 1918, by the Chancellor approving the account of the receiver, ordering payment of administration expenses, and ordering the application of the proceeds of sale of the real estate to the judgment creditors according to their priorities.    As a result one judgment, Baxter's, was paid in full with interest to date, and a payment made on account of the second judgment.    That disposed of all the assets in the hands of the receiver, except $5,867.70, with proved claims aggregating about $37,000.

The recommendation of the receiver as to distribution of the balance of the assets was set down for hearing and notice thereof given to all who had filed claims. At that hearing it was found necessary to have further information as to the insolvency of the association, and the receiver was directed to ascertain and report whether at the time of the issuance of withdrawal of full-paid certificates the association was insolvent; whether at the maturity of any withdrawal certificates it was insovlent; and whether at the time of the appointement of the receiver there was any money in the "Loan Fund" of the association applicable for payment of the withdrawing stockholders.

In his report the receiver answered all of the queries in the affirmative, except the last one, which was answered in the negative. His general conclusion was that—

"There never was a time from the date of its organization to the date of the appointment of the receiver that this association could have met upon liquidation its obligations to its stockholders."

Thereupon a further hearing as to the distribution was fixed for March 3, 1919, and notice thereof given.

At the hearing on March 3 certain further facts appeared by statements of counsel and in the record. The Baxter judgment was obtained on a certificate of withdrawal issued by the association on September 13, 1909, and payable August 31, 1911.

The Dick judgment was obtained on a certificate of indebtedness issued by the association on November 23, 1914, and payable July 31, 1915, the shares of stock of Class A held by Dick, having matured.

The Reynolds judgment was upon a withdrawal certificate issued June 26, 1914, and payable November 3, 1914, the shares having been surrendered and the certificate being for the withdrawal value of the stock surrendered. A copy of the certificate appears in the brief of counsel for the judgment creditor.

By its charter the object of the corporation was to assist members to acquire real estate by the payment by them of periodical installments, fines, premiums on loans made to them and interest on investments, and to accumulate a fund to be returned to its members when the funds to the credit of each share amounted to two hundred dollars. There was also a provision by Section 5

of the by-laws for the issuance of full-paid or investment stock, which was sold for at least two hundred dollars per share. The holder was entitled to receive only six per cent. semiannually, and after due notice, was entitled to be repaid his money with interest, or the association could call in, pay off and cancel the shares. The holders were given no interest in the profits, and the by-law had this apparently significant feature, viz.:

"The said interest shall be paid and received as the earnings of said shares."

There were provisions in the by-laws whereby after certain intervals members upon giving certain notice and surrendering their certificates of stock, could withdraw and receive either a withdrawal certificate, or a full-paid certificate, or a paid-up certificate, each having a privilege or right different from the others, but essentially the same. Each kind bore interest. See sections 25, 26, and 29 of by-laws. All withdrawals were subject to this provision:

"Sec. 27. Not more than one-half the amount received in any month shall be applicable for the payment of such withdrawing stockholders."

Claims were filed by holders of withdrawal certificates, full-paid certificates, full-paid stock and certificates of stock. The first two are of the same general character. They are those of members who have surrendered their shares and received certificates as to the amounts due, when payable and the rate of interest. Those based on full-paid stock are under section five of the by-laws. The others, and the greater number, are claims of members who had not obtained certificates of withdrawal, and who are called stockholders. In his report of September 10, 1918, the receiver has set out a copy of one of each of these instruments.

*Robert H. Richards, Aaron Finger, Charles W. Smith,* and *Ayres J. Stockley,* for judgment creditors.

*Charles B. Evans,* and *Caleb E. Burchenal,* for holders of withdrawal certificates.

*Herbert H. Ward* and *Thomas Davis,* for holders of full-paid stock.

THE CHANCELLOR. The questions to be decided were not raised or discussed until after an order had been made making a partial distribution of the assets of an insolvent building loan association. This distribution was made on the recommendation of the receiver after notice and without objection; but it should also be stated that it had not then been determined that the insolvency of the association existed from the beginning.

The first question to be considered is whether those members who before the appointment of the receiver recovered judgment against the association for money due them are entitled to preference or priority of payment over other members who have filed claims. Each of the three judgment creditors have received from the association ceritficates as to the amount due them and had surrendered their shares of stock in the association.

The theory of a building and loan association is, that all the members pay in money in installments, together with dues, and that some at least borrow money from the association, and that the payment of dues and interest continues until the accumulation is such that each share reaches a fixed sum. The power to withdraw before such maturity is a privilege or concession given for expedience, and is a variation of the general plan. If the by-laws or statute fix the conditions under which the members may be allowed to withdraw they must be complied with. Quite uniformly notice of a desire to withdraw is required, and it is so with this association. It also has a by-law providing:

"Not more than one-half the amount received in any month shall be applicable for the payment of such withdrawing stockholders."

There is no provision for the order of payment of several withdrawals.

This privilege of withdrawal is a right which is enforceable by an action at law, otherwise it would be valueless. Having given the proper notice and failing to receive what he is entitled to receive, a member may by an action of assumpsit, and by proving therein the facts upon which his right of action depends, obtain a judgment which he can enforce by execution on the property of the association. A judgment so obtained means that he has established such facts. If there be a defense to his claim, such as that there were not enough money available under the by-laws

to pay his withdrawal claim, then it was presumably determined in his favor by the judgment.  The judgment, so long as it stands, concludes the matter, and therefore it is not important to consider upon which of the parties the burden of proof rests.  If the association be insolvent, then in a suit on a withdrawal certificate that would be a bar to a recovery in full, for the mutuality involved in the scheme of the organization requires that each should bear his share of the losses.  This was illustrated in the case of *Trustees, etc., v. Tyre*, 3 *Boyce*, 89, 81 *Atl.* 48, where it was held that as the corporation was insolvent a borrowing member, when sued on the mortgage given by him to the association, was not entitled to credit on the debt moneys paid as dues, but only money paid as interest, and the premium paid when the money was borrowed. The adventure having failed, the borrowing member could not obtain any advantage over the other members, as he would have done had he been allowed as credits the sums paid to the association as monthly dues or installments.

From these principles it seems clearly to follow that those members who have obtained judgments against the association as withdrawing members have done so because all the facts necessary to entitle them to be paid the money due them as such withdrawing members have been determined in their favor, and their legal right to payment was complete at the time the receiver was appointed.  In winding up the affairs of the association through the receiver, the court recognizes established legal rights and gives effect to them, and does not violate the partnership feature peculiar to this kind of an organization in giving to these judgment holders their established legal rights.

It would be a denial of their legal right to hold that by the judgment nothing was ascertained but the amounts due them respectively, and that they must share with the other members the losses, which would mean that they would receive less than the amount which has been determined to be due them.  Furthermore, it seems to be inconsistent to say that the amount due can be fixed by a judgment, but that it is uncollectible, or that a court of equity may restrain collection thereof by execution until it be made to appear that it can be paid without injury or inconvenience to the association.  True, an association may be swamped by

withdrawals, and in some cases may need protection; but where the protection is given by the by-laws, as here, or by statute, if there be one, then it is for the association to claim the protection when sued, or for the court to require the suitor to show that he is entitled to withdraw his money. This association was protected by the by-law above referred to, and presumably it was complied with, even though long afterward it was made to appear in this receivership cause in this court that the association never was able to meet its obligations to its members—a fact which under the circumstances and facts disclosed by the report of the receiver was known, or should have been known, to the officers of the association. All this may be hard on the members who continued paying their installments or dues, and who will bear the losses of the association; but the officers of the association represent them as well as the withdrawing members.

These views are based on fundamental principles, the decisions cited and bearing on the question being conflicting and irreconcilable. Therefore, when a withddrawing member of a building and loan association recovers a judgment against the association for the amount due him, he becomes a creditor of the association and is entitled to payment as such in preference to the members thereof, even though at the time the notice of withdrawal was given, and thereafter, the association was insolvent and its affairs were afterwards wound up by a receiver appointed by the Court of Chancery. These judgment creditors had before the receivership acquired liens on real estate of the association, and this lien was properly transferred to the proceeds of the sale of the real estate sold by the receiver.

Another class of persons claim to be creditors, and as such entitled to payment prior to other shareholders. They are those who hold shares of full-paid or investment stock of the association, issued under the following section of the by-laws:

"Sec. 5. Full-paid or investment stock shall be sold at two hundred dollars per share, and any additional premium which may be obtained from time to time. Interest at the rate of six per cent. shall be paid semi-annually on such shares of stock. After shares of this kind have been in force for one year they may be surrendered by the holder or called in by the board of directors; provided, that before such surrender or calling in of the shares, notice be given of such intended action. On such surrender or calling in of said

shares the full amount paid in by said stockholder on such shares shall be paid to him, together with interest due and unpaid to the time that said notice of withdrawal is received. The said interest shall be paid and received as the earnings of said shares."

By its charter the purpose of the association was, in substance, to accumulate a fund by the payment by members of periodical installments on shares taken by them, from which fund the moneys paid would be returned to them when the funds to the credit of each share amounted to two hundred dollars. The charter also provided that the association could increase its resources by borrowing money. See Section 1 of charter. By section 6 of the by-laws it was declared that the incorporators and any other persons who are the owners of one or more shares on which installments have been paid shall be members of the association.

It is evident that this kind of stock is different in many ways from other shares as to rights, liabilities and purposes. The holder pays a lump sum for the stock when it is purchased, and does not pay installments until maturity. Further, he is entitled to be paid a fixed sum at a fixed time at a fixed rate of interest, instead of paying installments for an uncertain period of time until his stock matures. At the time fixed the stockholder could enforce payment, or the association could insist on making payment and surrender of the stock, and upon payment by whoever enforced the relationship was terminated; whereas the holders of other shares who desired to withdraw could do so only under conditions which might mean delay in receiving settlement, for not more than one-half of the amount received by the association in any one month was applicable to the payment of withdrawing members. Holders of full-paid or investment stock were expressly excluded from participation in the profits of the association, for it is stated in the certificates that the amount paid for the stock will be repaid in lieu of the book value of the shares, and the by-law says that the interest to be paid to such shareholder shall be paid and received "as the earnings of said shares"—meaning in lieu or place of such earnings, for the interest is payable whether there be earnings or not; whereas the holders of other shares are not credited with earnings or profits unless they be earned, and the earnings are necessarily uncertain. Holders of full-paid stock are not

members of the association, and, therefore, have no voice in its management, and so no responsibility, direct or indirect, for its failure.  It is impossible to escape the conclusion that holders of full-paid or investment stock were in legal effect creditors, though called stockholders, not being in fact or law members, having none of the rights or subject to any of the liabilities of holders of the other kinds of stock, and having distinctive rights which such other stockholders did not have, including the right on one side to demand, and, therefore, enforce payment at a fixed time, and on the other side to pay on or after a fixed time the fixed sum and so cancel the stock.  These are really loans made to increase the resources of the association, and the lenders must be creditors and given the rights thereof.

Having reached this clear conclusion it is not necessary to review the many cases where under different facts the courts have held holders of full-paid stock to be stockholders and not creditors. In one cited case the conclusion above stated is sustained, viz. *State ex. rel. Gray v. Phoenix, etc., Asso.*, 86 *Mo. App.* 301, 309. There the certificate was not essentially different from that issued to holders of full-paid or investment stock of this association, and the Court there, in a proceeding to wind up the insolvent association treated them as creditors, and said:

"The holder of one of these certificates has no interest in the profits or losses of the association. It can never be under any obligation to pay him more than it has actually received from him with interest, nor can it discharge its obligation to him by paying less. It is quite impossible to distinguish it from any other case of borrowing and lending money. It is no more than a case where money has been borrowed payable on sixty days notice after a certain period. It is idle to contend that the transaction was that of subscribing and paying for capital stock. Nothing of the kind was in contemplation by the parties at the time."

The moneys in the hands of the receiver for distribution are not sufficient to pay in in full those herein held to be creditors, so that it is unnecessary to consider the question of priorities between those who are not creditors but members, viz. holders of withdrawal certificates and members who have not withdrawn or applied for leave to withdraw.

The assets collected by the receiver, as shown by his report, and which will be increased by interest allowed thereon by the

depositary bank, is $15,082.03. Deducting therefrom the expenses of the receivership heretofore. allowed, aggregating $3,339.58, there remains $11,742.45. Of this sum $5,874.65, the proceeds of the sale of the real estate was rightly applied to the judgments according to their priorities as lien-holders, leaving in the hands of the receiver $5,867.80. This balance of the general assets is insufficient to pay the creditors in full. As to the assets other than the proceeds of the sale of the real estate, there are no sensible equitable priorities between the judgment creditors, and the holders of full-paid or investment stock, and the two classes of creditors will together share pro rata in the above mentioned fund.

The receiver will be directed to submit a distributive statement in accordance with this opinion, and thereafter a decree will be entered.