Marshall, C. J.,
 

 dissenting. The facts are so fully stated in the majority opinion that they need not be repeated, except in so far as is necessary to present the minority view. The facts which must be stressed are that Florence Dressel is not and never was a depositor in the Columbian Building
 
 &
 
 Loan Company. She has never voluntarily had any contractual relations with that company. She was a depositor in the National Savings
 
 &
 
 Loan Company, which company, by taking the necessary legal steps, sold and transferred all of its assets amounting to approximately two and one-half million dollars to the Columbian Company, which company had assets of approximately ten times that amount. Whereas by her voluntary action she became a creditor of the National Company, it has been sought by involuntary processes to make her a creditor of the Columbian Company. This situation has never been accepted by her. The doctrine of voluntary novation is well established in our jurisprudence, but this is believed to be the first time that it has ever been made to assume the phase of an involuntary and compulsory process. The doctrine of novation is based upon the theory that a new contract has been
 
 *284
 
 made, in which there has been a complete meeting of the minds. ' To make onr dilemma more hopeless, the National Company has been dissolved, and its ■ charter surrendered. To make the situation more distressing from a legal standpoint, Florence Dressel makes serious allegations of fraud in the sale and transfer of the assets of the National Company to the Columbian Company. These facts and circumstances are the basis of her application for an accounting and a determination of the question whether the assets of the National Company may be applied to the payment of the debts of the National Company. She has filed a suit in the court of common pleas of Franklin county for this purpose. No principle of law has been pointed out, and we know of none, which denies her right to an accounting, or which denies that the court of common pleas of Franklin county does have jurisdiction of such a cause. Unfortunately for her, in an excess of zeal she has asked for a receiver of all of the assets of the Columbian Company, reputed to be in excess of twenty-five million dollars, in order that she may have an accounting of assets which do not exceed two and one-half million. The opening statement of the majority opinion is significant:
 

 “The relator challenges the jurisdiction of the court of common pleas to hear the issue or matter with respect to the appointment of a receiver for the Columbian Building and Loan Company in the case now pending in that court. He does not seek to restrain or limit the hearing and determination of any other issue presented in that case.”
 

 It must be borne in mind, and this court has emphatically so stated, that there can be no suit for a
 
 *285
 
 receiver alone. A receiver is only and always an incident to a suit in which some other and major relief is sought. The attorney general now invokes the extraordinary writ of prohibition to prevent the court of common pleas from granting incidental relief in a cause where he does not even claim that the court may not hear and determine the major issues. It is apparently assumed that the court of common pleas would appoint a receiver unless prevented from doing so by the decree of this court. This is a violent presumption. The prayer of the petition is that a receiver be appointed for each of the defendant companies, and that the plaintiff have such relief as she may be entitled to in the premises. It would seem that there is no occasion for having a receiver in any case, and that the probable action of the court would be to appoint a master to determine what assets were applicable to the debts of the National Company. A receiver can only be appointed in accordance with the rules and principles of equity, and it is not easy to perceive any rules or principles which would justify the appointment of a receiver, and it may therefore be fairly assumed that the common pleas court would so decide. Any error of judgment on the part of the court could be quickly reviewed. So far as we are advised, no answer has been filed in the original suit of Mrs. Dressel, but this court has been asked to determine, and has in fact determined, upon the allegations of her petition, that the common pleas court is without jurisdiction to proceed to determine her right to incidental relief. The effect of this decision is, that the extraordinary writ of prohibition may be employed to halt proceedings in a cause over which the
 
 *286
 
 court has unquestioned jurisdiction in its essential facts, and to enjoin the court from granting certain incidental relief. We are of the opinion that the prohibition suit never should have been brought.
 

 The attorney general had already entered his appearance in the accounting suit. He should have demanded a hearing of the question of the receivership the same day the suit was filed, and should have pressed that demand with all vigor. He, should have had confidence that within a few hours the court would have reached a conclusion refusing to appoint a receiver, and that that conclusion would have been supported by facts and reason which would have given confidence to those who now lack confidence, and which would have been a factor in re-establishing economic stability. It may be assumed that the officers of the Columbian Company were honestly administering their trust, and a showing of that fact could easily have been made within a few hours. There could be no better way of voicing those facts to the public than by an open hearing in a court of justice, so that creditors and stockholders alike1 could have had a demonstration of the futility of the receivership. If, on the other hand, there were good grounds for a receivership, it is a shortsighted policy which would deny a receivership in the face of a clear right thereto. The present social and economic upheaval is due to lack of faith. The majority opinion states that there are 1,815,005 stockholders and 1,142,017 depositors in building and loan associations in Ohio. Their fears could be allayed by a hearing and decision supported by facts and reasons. Those fears will be enormously augmented by denying access to courts. The majority opinion
 
 *287
 
 discusses social and economic conditions, and this is in every sense proper. An opinion which deals in nothing except cold logic, and which fails to take into consideration human welfare and social well being, and which loses sight of the economic interest to be affected, would deservedly meet with condemnation. But has not the majority opinion “strained at a gnat and swallowed a camel?” The doors of the courts have been closed in the face of the depositors and stockholders, and they have been told to go to the' superintendent of building and loan associations for relief. A judicial officer, well trained for his task, responsible directly to the people, his title to his office dependent upon their suffrage, is not likely to yield to the persuasions of a single depositor or stockholder to the detriment of the multitude who are of a different opinion. His judgment must be as sound and his oath of office as sacred as the appointee of the political department of the government. It is assumed that the present superintendent of building and loan associations is an honest capable official, but I deny that he is more trustworthy or his administration more sound than that of a common pleas judge. If it is the personnel of the judgeship that is under attack, that situation can be remedied by an affidavit of bias. If it is the office itself, it constitutes a terrific indictment of our judicial system. It ill becomes the highest court of this state to prohibit the trial courts from the discharge of duties which have belonged to those courts from time immemorial.
 

 Let us look at the matter from another angle.
 

 Must there be a restraint imposed upon the millions of depositors and stockholders of building and
 
 *288
 
 loan associations in this state? Are they to have no voice in the use of their money or the recovery of it after it has once been deposited in such an institution?
 

 If only the superintendent of building and loan associations.in this state may determine whether the stockholders and depositors are entitled to assert their rights, or, more accurately speaking, whether they have any rights at all, then it must follow as a corollary to that proposition that whenever the superintendent makes his determination the courts must do his bidding without question. The superintendent becomes a real dictator. Due process becomes an empty and meaningless phrase. The alleged right of judicial determination of controversies in this state is lost. The judicial branch of the government has been submerged and swallowed up by the executive branch. Stockholders and depositors are not in the class to be restrained by force; on the other hand, they are the thrifty portion of our people who have laid aside each week a portion of their earnings against a rainy day, and they are not likely to waste their savings,by a foolish resort to wrecking the institutions which have protected those savings and paid them a high rate of interest. They are sane and law-abiding citizens, who will be responsive to facts and arguments, but rebellious against the exercise of arbitrary power. No better evidence of their stability should be needed than the experience of the past year. Building and loan associations everywhere in Ohio have been compelled to suspend payments to depositors, and to apply the so-called 60-day rule of withdrawals. And yet the
 
 *289
 
 depositors have accepted the situation, and resort to the courts has been almost unknown.
 

 The petition for the writ of prohibition alleges that, unless prohibited by this court, the court of common pleas will appoint a receiver. The common pleas judge in an answer denies that he will appoint a receiver unless the facts and the law warrant the appointment under the rules and principles of equity.
 

 I concur in the first proposition of the syllabus, stating the giiasi-public character of building and loan associations and the propriety of placing them under state inspection, supervision and regulation, but let us have no misconceptions of the character of that regulation. It is the regulation of the association for the benefit of its creditors. It. is not regulation of creditors for the benefit of the corporation.
 

 The majority opinion cites numerous cases in support of its conclusions, and quotes from three of them. At least two of those three are pertinent, and their arguments strongly set forth that side of the case. On the other hand, there are numerous decisions of other states which set forth the contrary view.
 
 People, ex rel. Chicago Title & Tr. Co.,
 
 v.
 
 Kowalski,
 
 307 Ill., 378, 138 N. E., 634;
 
 Amer
 
 v.
 
 Union Bldg. & Loan Assn.,
 
 50 N. J. Eq., 170, 24 A., 552;
 
 Universal Savings & Tr. Co.
 
 v.
 
 Stoneburner,
 
 (C. C. A.), 113 F., 251;
 
 Gumby
 
 v.
 
 Armstrong,
 
 (C. C. A.), 133 F., 417;
 
 Andrews
 
 v.
 
 Roanoke Bldg. Assn. & Investment Co.,
 
 98 Va., 445, 36 S. E., 531, 49 L. R. A., 659;
 
 Frostburg Bldg. Assn, of Allegany County
 
 v.
 
 Stark,
 
 47 Md., 338;
 
 Wehrs
 
 v.
 
 Sullivan,
 
 217 Mo., 167, 116 S. W., 1104;
 
 Continental Natl. Bldg. & Loan Assn.
 
 v.
 
 Miller,
 
 44 Fla., 757, 33 So., 404;
 
 Lamp
 
 v.
 
 Homestead
 
 
 *290
 

 Bldg. Assn.,
 
 62 W. Va., 56, 57 S. E., 249;
 
 Sjoberg
 
 v.
 
 Security Savings & Loan Assn.,
 
 73 Minn., 203, 75 N. W., 1116, 72 Am. St. Rep., 616;
 
 Boyd
 
 v.
 
 Robinson,
 
 104 Ga., 793, 31 S. E., 29;
 
 In re Natl. Bldg., Loan & Provident Assn.,
 
 12 Del. Ch., 93, 107 A., 453.
 

 We are of the opinion that if it can be said there is any weight of authority, that weight is contrary to the conclusions of the majority opinión.
 

 The majority opinion rests largely upon an interpretation of Section 687, General Code, which reads as follows:
 

 “If, upon examination, the inspector of building and loan associations finds that the affairs of a domestic building and loan association are in an unsound condition, and that the interests of the public demand its dissolution and the winding up of its business, he shall so report to the attorney general, who shall institute the proper proceedings for that purpose.”
 

 Surely the language of that statute does not expressly or even impliedly give the attorney general the exclusive right to institute proceedings for the dissolution and winding up of the business of such associations. It will be conceded from a practical standpoint that the appointment of a receiver does sound the death knell of such an association. But there is nothing in that section even referring to a receivership. By the common law, from time immemorial, courts have had the right to appoint receivers on equitable grounds. This statute must therefore be held to be in derogation of the common law, and by the well-settled rules .of interpretation, its provisions must'be strictly construed. We are of the opinion that even by the most liberal interpre
 
 *291
 
 tation it cannot fairly be said that that statute gives exclusive authority to the attorney general.
 

 The majority opinion interprets that section in the light of the decisions of other states. We think it must be interpreted in the light of Section 16 of the Ohio Bill of Rights:
 

 “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
 

 The true interpretation of Section 687 is that the remedy thereby provided is cumulative only, and is a definition of one of the powers, and a prescription of one of the duties, of the attorney general.
 

 It has been claimed by counsel that Section 710-101, General Code, gives to the superintendent of banks exclusive power over applications for receivership of banks. We deny that that section makes any such provision. It only provides that the superintendent of banks must have notice of an application, and he is given the right to take possession of a bank within five days after such application, in which event the application must be denied; or, if a receiver has already been appointed, the appointment must be vacated. This only gives the superintendent of banks the power to supersede a receiver appointed by the courts by actually taking possession of the institution. It in no sense denies the right of a creditor, or a stockholder, to invoke the jurisdiction of the court. It is true that Section 9487, General Code, does expressly give that power in the case of insurance companies; the power being reposed in the attorney general. But it does not fol
 
 *292
 
 low that that statute is constitutional. And, if so, it only shows that the legislature has in one instance expressly given the power, and in the case of the superintendent of building and loan associations, has refrained from giving it.
 

 Section 687, General Code, formerly Sectión 3836-18, Revised Statutes, originally appeared in the act of May 1,1891 (88 Ohio Laws, 469, 474, Section 18). It has therefore been in existence 40 years, and during all of that time the jurisdiction of the courts to appoint receivers of building and loan associations in proper cases has not been questioned. On the other hand, in numerous cases, receivers have been so appointed. At least six cases decided by courts of inferior jurisdiction have been reported, and tw'o cases have been decided and reported by this court.
 
 Bayless
 
 v.
 
 Baird, Recr.,
 
 110 Ohio St., 305, 143 N. E., 703;
 
 Eversmann, Recr.,v. Schmitt,
 
 53 Ohio St., 174, 41 N. E., 139, 29 L. R. A., 184, 53 Am. St. Rep., 632. If the appointment of a receiver by a court at the suit of a creditor or stockholder is beyond the jurisdiction of the court, then every order made in those cases was a nullity. We cannot accept that doctrine.
 

 There is no appeal from the action of the superintendent of building and loan associations, and no method by which an arbitrary decision on his part could be reversed. There is no opportunity for a judicial determination of an issue which is clearly justiciable. We cannot escape the conviction that even from a policy standpoint it is better to repose this tremendous power in the one hundred and forty-four common pleas judges of the state, to whose
 
 *293
 
 decision there would be in each instance a ready review.
 

 More important than all of the considerations hereinbefore stated is the fact that this surrender of democracy to centralization detracts from thé self-reliance, the initiative, and the independence of the individual citizen. It is one more step in the growing tendency to turn to the government for relief from all the economic and social ills that the individual citizen is heir to.